## MORRISON ET AL. *v.* JACKSON.

In 1802 a concession of six thousand arpents of land was made to S. by the acting Spanish governor of Upper Louisiana. An official survey, made by the officer designated in the concession, and in part fulfilment thereof, gives the boundaries of a tract situate on the river Des Pères, about eight miles from St. Louis, containing four thousand and two arpents. Another survey was made by the same surveyor, under the same concession, of another tract, upon the river Meramac, about twenty miles south-west of St. Louis, supposed to contain fourteen hundred arpents. The claim of S. was rejected in 1811 by the board of commissioners, but was confirmed by the recorder of land-titles for the quantity contained in a league square (seven thousand and fifty-six arpents), situate on the river Des Peres, and the decision of that officer, embraced in his report of February, 1816, was confirmed by an act of Congress, April 29, 1816. The surveyor of the United States for the Territory of Missouri surveyed for S., on the sixth and seventh days of May, 1818, a tract

containing one league square, and including the four thousand and two ar-
pents covered by the previous survey, and it was designated on the plat of
the township as survey No. 1953. The recorder of land-titles made his certifi-
cate No. 1033, dated Sept. 13, 1825, setting forth that S. was entitled to receive
a patent for the tract containing seven thousand and fifty-six arpents as con-
tained in said survey No. 1953, and transmitted it to the Commissioner of the
General Land-Office for a patent. The latter declined to issue it, as it varied
from the original survey, and included land not therein embraced. S., by
deed bearing date Aug. 29, 1818, conveyed to H. certain lands therein specifi-
cally described, which had been previously confirmed, and also the interest of
said S. in all the land to which said S. was entitled by virtue of concessions
under the Spanish government, ratified by act of Congress. S. died in 1824.
Congress in 1842 directed a patent to issue to S., or his legal representatives,
for seven thousand and fifty-six arpents, pursuant to patent certificate No. 1033,
Sept. 13, 1825, and to the survey No. 1953. The patent was accordingly issued
Feb. 1, 1869. *Held*, that by virtue of the deed of S. his grantee H. became his
legal representative, and acquired as against the heirs-at-law of S. the title to
all the tracts of land described in said patent.

ERROR to the Circuit Court of the United States for the
Eastern District of Missouri.

*Mr. P. Phillips* and *Mr. J. L. D. Morrison* for the plaintiffs
in error.

*Mr. John R. Shepley* and *Mr. J. M. Koune, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Claimants holding incomplete titles to land in the territory
ceded by France to the United States were required, by the
act of the 2d of March, 1805, to deliver, before the day therein
named, to the register of the land-office or the recorder of land-
titles in the district where the land was situated, a notice in
writing, stating the nature and extent of the claim, together
with a plat of the same, and every grant, order of survey, and
conveyance, or other written evidence of the claim, in order
that the same might be recorded.   2 Stat. 326.

Prior to the passage of that act the province ceded by the
treaty had been subdivided and organized into two territories,
and the fifth section of the act before referred to made pro-
vision for the appointment of commissioners in each of the
territories to ascertain and adjudicate the rights of persons
claiming such incomplete titles. Power was conferred upon
the commissioners to hear and decide, in a summary way, all
matters respecting such claims, and the provision was, that their
adjudications should be laid before Congress, and be subject to
their determination.

Both parties in this case claim under the same original title, which is evidenced as follows : —

1. By the petition of Gregoire Sarpy, addressed to the acting governor, in which he asks for a concession of six thousand arpents of land, to be taken from along the river Des Peres, and in the woodland parts that belong to the domain of the king.

2. By the preliminary concession of the acting governor, dated Oct. 28, 1802, in which he concedes the land solicited, if it does not prejudice any person, and directs the local surveyor of the province to put the interested party in possession of the quantity of land which he asks in the indicated location. Direction is also given to the surveyor, in the same instrument, that he should make a plan of the land conceded and deposit the same at the military post, and furnish the party with a certificate which will serve to obtain the concession and the legal title from the intendant-general, to whom, by royal decree, belongs the granting of vacant land.

3. By the official survey made by the surveyor designated in the concession, which gives the courses, distances, corners, and monuments of the tract surveyed, supposed to contain four thousand and two arpents, together with a figurative plan of the same, showing that it was situated upon the river Des Peres, about eight miles from St. Louis, the river being the eastern boundary of the tract.

4. On the 15th of April, 1804, another survey was made, under the same concession, by the same surveyor, in favor of Gregoire Sarpy, situate upon the river Meramac, in the woodlands of the king, about twenty miles south-west of St. Louis; and it appears that the surveyor returned a figurative plan of the tract, supposed to contain fourteen hundred arpents.

5. Supported by these evidences, the claim for six thousand arpents was presented by Gregoire Sarpy to the board of commissioners, under the act of the 2d of March, 1805, and the subsequent acts supplementary thereto; and the claim was, on the 9th of December, 1811, rejected by the said commissioners.

6. Pending the examination of the same before the board, the sheriff of the county, by virtue of an execution, levied upon and sold the four thousand and two " arpents of land on the

river Des Peres, being the same, more or less," and "being a part of the quantity of six thousand arpents granted on the 28th of October, 1802, to said Sarpy;" and it appears that, on the 29th of June, the sheriff made a deed of the same to Pierre Chouteau.

7. Pierre Chouteau and wife, by deed dated June 30, 1808, conveyed, among other parcels of land, to Madame Pelagie Chouteau, Widow Labadie, the four thousand and two arpents, just as the tract was acquired from the sheriff, situated on the river Des Peres, and also "another land of fourteen hundred arpents," situated on the river Meramac, the last two lands forming a part of a concession of six thousand arpents granted on the 28th of October, 1802, to the said Gregoire Sarpy by the acting governor under the former government.

Among other things, it is agreed by the parties that Gregoire Sarpy died in the year 1824, leaving three sons as his heirs, — to wit, John B. Sarpy, Peter A. Sarpy, and Thomas Sarpy, — two of whom — to wit, John and Peter — were living on the 11th of August, 1842, but that they all, before the first day of February, 1869, departed this life, each having by last will and testament devised his estate, real and personal, to Virginia, John R., and Adele S. Sarpy, the only children of John B. Sarpy at the time of his death, and being the nephew and nieces of Peter A. Sarpy at the time of his decease; that John R. Sarpy died single and without issue, subsequent to the death of his father and uncle, having by last will and testament devised his entire estate to Virginia Berthold, since intermarried with Armand Penguet, and to Adele S. Morrison, wife of James L. D. Morrison; that Armand Penguet and Virginia S. Penguet conveyed all their interest and title in and to survey 1953 to James L. D. Morrison before the present suit was commenced; that his wife, sometimes described in the record as Adele S. Morrison, is the granddaughter of Gregoire Sarpy, and one of his three living heirs; and that the wife of Gregoire Sarpy departed this life before the commencement of the suit; and that Edward Abend is a trustee under a marriage settlement between the plaintiff and his wife, and that he claims no beneficial interest in the suit in his own right.

Certain portions of the premises, as more fully described in

the record, — to wit, two undivided third parts of the same, —are claimed by the plaintiffs; and it appearing that the defendant was in possession of the same, the plaintiffs brought ejectment in the Circuit Court to try the title; and service being made, the defendant appeared, and, for answer to the petition, filed a denial that the plaintiffs were entitled to the possession of the premises, and alleged that he and those under whom he claims and derives title have, for more than ten years prior to the commencement of the suit, been in the quiet, uninterrupted, and exclusive possession of the premises, adverse to the plaintiffs and all those under whom they derive their title.

Both parties appeared and waived a trial by jury, and stipulated to submit the issues to the court. Many matters of fact were agreed between the parties, and certain others are embraced in a special finding of the court. Hearing was had, and the Circuit Court entered judgment for the defendant; and the plaintiffs sued out the present writ of error.

Sufficient appears in the agreed statement to show that Gregoire Sarpy is the same person to whom the concession was made by the acting governor of the province under Spanish rule, and that the persons named in the agreed statement as the heirs of Madame Labadie — to wit, her son Sylvester and her four daughters — are the same parties who, together with their husbands, on the 29th of August, 1817, executed the deed to Wilson P. Hunt, through and under which the defendant makes claim to the land of which he is now possessed, as stated in his answer.

From the same source, it also appears that Wilson P. Hunt died in 1843; that his wife was duly appointed administratrix of his estate; and that the property described in the deed was duly ordered to be sold as part of the estate of the decedent; and that it was so sold by the administratrix for the payment of the debts due from the estate of the deceased: and it is also agreed, that the defendant has, for more than ten years next before the commencement of the suit, been in the quiet, uninterrupted, and continuous possession of the premises, under claim of title thereto, adverse to all the world.

Due sale of the premises, it must be admitted, was made by the administratrix; and the record shows that she conveyed the

same to the grantor of the defendant, which, together with the deed to him from his grantor, completes the title, so far as respects the conveyances under which the defendant attempts to justify his possession.

Before the heirs of Madame Labadie, including Gregoire Sarpy and wife, conveyed the premises to Wilson P. Hunt, certain other proceedings took place in the office of the recorder of land-titles, which it is important to notice.

Power to confirm incomplete titles derived from the former governments of the province, whether arising from grants, concessions, or warrants or orders of survey, was vested in the commissioners, appointed under the act before referred to, and the several supplements thereto, and it is matter of general knowledge that the larger portion of such claims were satisfactorily adjusted by virtue of those enactments. Others, however, remained when Congress, on the 12th of April, 1814, passed the act for the final adjustment of such incomplete titles. 3 Stat. 121.

By that act, claimants of the kind were, in certain cases and under certain conditions, confirmed in their claims; but it was expressly provided that no claim shall be confirmed by the first section of the act which shall have been adjudged by either of the boards of commissioners, or a register or receiver of public moneys, or a recorder acting as such, to be *antedated or otherwise fraudulent;* nor was it allowed that any one should claim a greater quantity of land than the number of acres contained in one league square, nor could the claim of any person, in his own right, be allowed who had previously received, in his own right, a donation grant from the United States in said State or Territory.

Pursuant to that act, the recorder of land-titles, on the 2d of February, 1816, made his report to the Commissioner of the General Land-Office, inclosing four tabular lists; and the record shows that the claim in question was included in the third list, and that it was reported as confirmed for the quantity contained in a league square, which is seven thousand and fifty-six arpents.

Comprised in the third list are confirmations of concessions, orders or warrants of survey, principally under the act of the

12th of April, 1814, and the claim in controversy is placed in the list, as follows : —

"Concessions," Ch. D. Delassus, Lt. Gov.; "survey," 18th March, 1803, and 2d January, 1804; "claimant," Gregoire Sarpy; "land claimed," six thousand arpents; "situation," river Des Peres. Opinion of the recorder, "confirmed, not exceeding a league square." 3 Am. State Papers, 337.

Official reports of claims not confirmed were required, under the act of the 3d of March, 1809, to be made by the commissioners to the Secretary of the Treasury, and they were directed to arrange such reports into three classes: (1.) Claims which, in the opinion of the commissioners, ought to be confirmed in conformity with existing laws. (2.) Claims which, though not embraced within the provisions of existing laws, ought, nevertheless, in the opinion of the commissioners, to be confirmed in conformity with the laws, usages, and customs of the former sovereign. (3.) Claims not embraced within the . provisions of existing laws, and which, in the opinion of the commissioners, ought not to be confirmed. 2 Stat. 140.

Reports of the kind were made as required; and Congress, on the 29th of April, 1816, enacted that all claims embraced in the report of the recorder of land-titles, acting as commissioner, dated the 2d of February, 1816, where the decision of the commissioner is in favor of the claimant, shall be, and the same are hereby, confirmed. 3 Stat. 329.

All these proceedings took place before the heirs of Madame Labadie, including Gregoire Sarpy and wife, conveyed the whole tract of seven thousand and fifty-six arpents to Wilson P. Hunt, whose legal representative conveyed the same to the grantor of the defendant.

Attempt is made in argument to show that the words of the deed are not sufficient to convey the premises; but it is so manifest that the proposition is without merit, that it is unnecessary, in the judgment of the court, to pursue the argument, and the proposition is accordingly dismissed without further remark.

Subsequent proceedings also took place to secure the rights of the claimant, which deserve to be noticed. Enough appears to show that the surveyor of the United States for that Territory, on the 7th of May, 1818, surveyed the seven thousand

and fifty-six arpents on the river Des Peres for Gregoire Sarpy, who claimed the same in his own right, and that the surveyor designated the survey thereof on the township plats as survey No. 1953; and it appears that the survey made at that time embraced the whole of the original survey of four thousand and two arpents reported by the surveyor of the former government.

Due report of that survey was made, and the recorder of land-titles, on the 13th of September, 1825, issued a patent certificate, No. 1033, to Gregoire Sarpy or his legal representatives, for seven thousand and fifty-six arpents, as contained in the said survey No. 1953, and transmitted the same to the proper authorities here for a patent.

Evidence that the patent certificate was received here is convincing, as the Commissioner of the General Land-Office, under date of Dec. 14, 1825, writes to the surveyor at St. Louis that it is received, and states that the recorder, under the provisions of the act of April 12, 1814, confirmed the claim, "not exceeding a league square," and requests information as to the quantity of the land actually contained within the surveys, not exceeding a league square.   Five days later, he stated, in another communication, that the patent on the resurvey is withheld, because it varies from the original survey, and includes a large body of land confessedly not included in either of the original surveys.

Appeal was made to Congress for redress, and Congress, on the 11th of August, 1842, passed the act entitled "An Act for the relief of Gregoire Sarpy or his legal representatives," which provides as follows: "That it shall be the duty of the proper officers of the United States to issue a patent to Gregoire Sarpy or his legal representatives for seven thousand and fifty-six arpents, containing six thousand and two acres and fifty-hundredths of an acre of land, pursuant to patent certificate No. 1033, dated Sept. 13, 1825, and to the survey thereof, numbered 1953, certified by the said survey on the 13th of September, 1825."

Complete redress followed, as the patent, dated Feb. 1, 1869, was duly issued, reciting therein the act of Congress commanding the officers to issue it, the patent certificate and survey

granting the land described in survey No. 1953 to Gregoire Sarpy or his legal representatives.

For more than twenty years prior to the commencement of the suit the defendant had been in possession of the land described in the petition, having acquired it from Pierre Chouteau, who acquired it from the legal representatives of Wilson P. Hunt. But it is conceded by the defendant that the tract possessed by him was outside of the premises described in the deed of the sheriff to Chouteau, and outside of the survey of the four thousand and two arpents, and that it was west of the portion of the concession so surveyed, and in the western part of the survey No. 1953, for which the patent certificate was issued.

Material conclusions of law were also adopted by the Circuit Court, which are entitled to be considered in connection with the facts agreed, and such as are embraced in the findings of the court. They are as follows: —

"1. That the deed of the sheriff to Pierre Chouteau, dated June 29, 1808, is inoperative as a conveyance, because it was not acknowledged as required by the laws then in force.

"2. That the said deed is admissible in evidence as explanatory of the subsequent conveyances which expressly refer thereto.

"3. That the deed from the heirs of Madame Labadie, including Gregoire Sarpy and wife, to Wilson P. Hunt, dated Aug. 29, 1817, is a confirmation by said Sarpy of the sale by the sheriff in 1808 to Pierre Chouteau.

"4. That the deed last mentioned conveyed to said Hunt all the tracts of land therein described which had been previously confirmed, and also the interest of said Sarpy in all other tracts of land described therein, to which the said Sarpy had a claim under concessions by the Spanish government.

"5. That by virtue of said conveyance last mentioned the grantees under said Hunt to said land and claims became the legal representatives of Gregoire Sarpy as to the premises in controversy, through survey No. 1953, the patent certificate No. 1033, the act of the 11th of August, 1842, and the patent dated Feb. 1, 1869, and that said legal representatives acquired the title to all the tracts of land described in the said patent.

"6. That the title to the premises in dispute, thus acquired from the United States by said legal representatives, passed by operative and valid conveyances to the defendant, and that the plaintiff is not

entitled to recover, and it appears that the Circuit Court rendered judgment for the defendant and for his costs."

Authority was vested in the recorder of land-titles, by the act of the 13th of June, 1812, to perform the same duties in relation to such claims, *not decided on* by the commissioners, as were possessed and exercised by the boards constituted for the purpose under former laws, except that all of the decisions of the recorder were to be subject to the revision of Congress. 2 Stat. 751.

Titles of the kind were, in numerous instances, adjudicated by the recorder ; and many such claims were confirmed and patented.　Doubt upon that subject cannot be entertained ; but his jurisdiction did not extend to claims *decided on* by the commissioners.　3 Am. State Papers, 337.

Beyond all doubt, the claim in question was rejected ; but the record furnishes no warrant for the suggestion that it was to be regarded as antedated or fraudulent.　Instead of that, the clear inference is, that the *bona fides* of the claim was not drawn in question ; and the proof that the claim was actually confirmed by the recorder is full and satisfactory, and it is equally so that the claim as confirmed was reported to Congress.

Confirmations of the kind, in excess of jurisdiction, certainly were not in any sense obligatory upon Congress ; but it cannot be doubted but that power existed in the Congress to adopt and ratify such an adjudication, if for any reason the legislative branch of the government deemed it just and proper to make such a grant.

Documentary evidence of the most authentic character shows that the claim was confirmed by the recorder, and that it was reported to Congress : and the better opinion is, that it was confirmed by the second section of the act passed for the confirmation of such incomplete titles to lands in that territory ; but the court here is not inclined to rest the decision entirely upon that ground.　3 Stat. 329.

Evidence to show that the claim was confirmed by the recorder, and that it was duly reported to the land-office, is ample ; and, if more be needed, it is found in two communications from the land commissioner, to which reference has already been made.　He, the commissioner, there admits the confirmation :

and the only excuse he offers for withholding the patents is, that the survey is too large; and in consequence of that suggestion the claimant is subjected to further delay. Justice being denied by the executive officers, application was made to Congress for redress: and Congress, in view of the whole case, directed the proper officers of the United States to issue the patent to the original claimant or his legal representatives; and we are all of the opinion that the defendant, to the extent specified in the patent, is the legal representative of the original claimant, and that the judgment rendered by the Circuit Court is correct. *Judgment affirmed.*

NOTE. — *Morrison et al.* v. *Benton*, error to the Circuit Court of the United States for the Eastern District of Missouri, involved the same questions as the preceding case, and was argued by the same counsel.

MR. JUSTICE CLIFFORD delivered the opinion of the court. Certain described parcels of lands, amounting in the aggregate to seven hundred and seventy-nine acres and one-fourth, are the subject-matter of the controversy in this case. Those parcels of land are claimed by the plaintiffs as part of six thousand arpents conceded under Spanish rule to Gregoire Sarpy, as more fully explained in the opinion given by the court in the case just decided.

Actual possession of the premises being held by the defendant, the plaintiffs brought ejectment to try the title to the land, claiming to be the legal representatives of the original donee for two undivided third parts of the said several parcels. Service was made; and the defendant appeared and filed an answer, in which he specifically describes the several parcels of land which are in his possession, and which he claims as his own property. Apart from that, he also denies that the plaintiffs are entitled to the possession of the land, and alleges that he and those under whom he claims have been in the actual, undisturbed, and continuous adverse possession of the land for ten years and more next before the suit was commenced.

Both parties appeared and waived a trial by jury, and they agreed to the following facts : that the lands in controversy are within the out-boundary lines of the survey under which the patent was granted to Gregoire Sarpy or his legal representatives; that the original donee died in the year 1824, leaving three sons — John, Peter, and Thomas — surviving the deceased; that the plaintiffs claim title under John and Peter Sarpy, both of whom were living at the date of the act passed for the relief of Gregoire Sarpy or his legal representatives. 6 Stat. 854.

They also stipulated that Gregoire Sarpy is the same party who, with the other heirs of Madame Labadie, conveyed the land in question to Wilson P. Hunt, under whom the defendant claims title, and that all the grantors in that deed died before the date of the patent.

Sufficient appears to show that the plaintiffs claim that they are the legal representatives of Gregoire Sarpy, and consequently are the rightful grantees of the land under the patent issued in obedience to the said act of Congress. 6 Stat. 854.

Pursuant to that theory, they gave in evidence all the muniments of title in-

troduced in the case just decided, together with the patent, and maintained the same propositions as those which they submitted in that case. Opposed to that theory, the defendant claimed, and still claims, that he is entitled, by purchase and conveyance, to be regarded as the legal representative of the original donee; and he refers to the same muniments of title, with others introduced by him, to show the justice and validity of his claim.

Hearing was had in the court below, and the court rendered judgment for the defendant. Appended to the agreed statement of facts are certain conclusions of law adopted by the Circuit Court; but it is not deemed necessary to reproduce those conclusions, as they are substantially the same as those exhibited in the case already decided.

Dissatisfied with the judgment, the plaintiffs removed the cause into this court. Since the cause was removed here, the parties have been fully heard; and, in the judgment of this court, there is no error in the record. Our reasons for the conclusion are stated in the other case, and will not be repeated, as the facts and legal questions presented for decision are substantially the same in both cases.                                                    *Judgment affirmed.*