## JONES v. MOLSTER, ADMINISTRATOR.

1. REPLEVY OF PROPERTY UNDER CONTRACT OF SALE MADE IN ANOTHER STATE.

Where J., under the laws of Virginia executes a valid conditional contract of sale to P., which is duly recorded, and P., subsequently removes to Ohio and with the knowledge and consent of J., takes the piano with her under an agreement with J.. to execute a new contract or lease under the laws of Ohio, but which P., fails to execute and dies insolvent: *Held*, that J., not having taken the necessary steps required by the statutes of Ohio to make such contract a valid lien upon the piano as against creditors, mortgagees and purchasers in good faith, and, therefore, he could not successfully maintain an action of replevin for the recovery of the piano, though he could have replevied the piano from P., during her life time, which upon her death descended to her personal representatives and became assets in the hands of the administrator, to be administered for the sole benefit of P.'s creditors, and disbursed ratably among them.

2. COMITY BETWEEN STATES REGARDING ENFORCEMENT OF CONTRACTS.

If a contract is not contrary to the law of the state where it is sought to be enforced, then, as a matter of comity, if valid where made, it will be enforced by the courts of this state.

RUSSELL, J.

ERROR to the Court of Common Pleas of Scioto county.

This was a suit in replevin by Jones against Molster to recover the possession of a piano. The facts are as follows :

On the second day of October, 1891, John A. Jones, then residing at Huntington, West Virginia, sold to Jennie Pine, residing at the same place, a piano, under a conditional bill of sale, of which the following is a copy :

"Huntington, W. Va., Oct. 2, 1891.

"Whereas John A. Jones has rented to Jennie Pine *an* piano, stool and scarf, and whereas said Jennie Pine wishes to have the refusal thereof in case the said Jennie Pine should desire to purchase said piano at any time within twenty-nine months from the date thereof. Now said John A. Jones agrees to sell the said piano to said Jennie Pine at any time within twenty-nine months from the date hereof for the sum of three hundred dollars, with interest from date, *cash* at 6 per cent per annum. In case said Jennie Pine should purchase said piano within said period, said John A. Jones agrees to refund to said Jennie Pine all rent for said piano paid by said Jennie Pine to said John A. Jones between the date thereof and the date of purchase. Any payments made hereafter to said John A. Jones by said Jennie Pine over and above the rent of said piano are to be held by said John A. Jones on deposit subject to the order of said Jennie Pine. Said piano is not to be considered sold and no property therein to rest in said Jennie Pine until said purchase money is actually paid to said John A. Jones.

"Harvard Style B., No. 1547.

"Jennie Pine, (Seal).
"Jno. A. Jones, (Seal)."

"Valued at $300.00.   Huntington, Va., Oct. 2, 1891.

"This is to certify that I have this day hired of John A. Jones *an* piano valued at three hundred dollars which I agree to return to him in as good conditon as when received customary wear and tear excepted. I further promise and agree to return said piano to the said John A. Jones in Huntington whenever he shall require or demand the same ; provided the money paid in advance for time not expired if any be re-funded.   Also, to insure the same against loss by fire and be also re-sponsible for the same on such occasions, and also that this piano shall not be removed from the premises now occupied by me at No. -- -- , Huntington, W. Va., (removal from danger by fire excepted).   Hired by the month at ten ($10.00) dollars in advance.

"Jennie Pine,   (Seal)."

This instrument was duly signed, acknowledged and recorded October 22, 1891, in the office of the county clerk of Cabell county, as required by the laws of West Virginia.

It is admitted by both of the parties to this action, that this contract in question is a valid one under the laws of West Virginia, and was on the 22d day of October, 1891, duly rcorded in the office of the clerk of the county court of Cabell county, in that state, according to law.

On the 25th day of May, 1893, Jennie Pine removed to Portsmouth, Ohio, to reside permanently in that place; and at the same time, with the knowledge and consent of Jones, she took the piano in question with her to Portsmouth, under an agreement with him to execute a new contract or lease, under the laws of Ohio, when she became settled there. She resided in Portsmouth until her death on the 12th day of July, 1894, and made payments on the piano up to that time, amounting to the sum of $120.

On the 27th day of July, 1894, Charles E. Molster was duly appointed her administrator by the probate court of Scioto county, Ohio, and as such administrator, took possession of the piano, along with her other assets, and had it appraised.   At the time of her death, Jennie Pine had preferred debts for physicians, nursing and funeral expenses to the amount of $225, and general debts to the amount of $300.   The assets coming into the hands of the administrator, including the piano, amounted to $225.

The conditional contract of sale between Jennie Pine and Jones was never filed in the office of the recorder of Scioto county, although she had agreed to give a new contract on her removal to that state, when she took the piano to Portsmouth with the knowledge and consent of Jones.   Jones came to Portsmouth on August 1, 1894, and demanded the redelivery of the piano from Molster, the administrator, which was refused.   Thereupon, Jones replevied the piano from Molster, on the same day.

The case was tried before Volney R. Row, justice of the peace, and judgment rendered for the plaintiff.   Thereupon the defendant appealed to the common pleas court, and the case was tried before a jury.   It was conceded by both parties that the value of the piano did not exceed $125.   The common pleas court charged the jury that at the commencement of the action, the defendant had the right to the property, and to the possession thereof, and that they should simply assess the damages. The case being submitted to the jury on the question of damages only, they returned a verdict for the defendant in the sum of $90.   A motion

for a new trial by Jones was overruled, and he filed his petition in error, the errors assigned being on the weight of the evidence and the charge of the court.

RUSSELL, J.

The case presents these questions:

1. What were the rights of Jones as to this property? It will not be denied, under these pleadings, but that as between Jennie Pine and Jones, the latter would under the West Virginia contract, have the right to replevin the property from her in law, at any time prior to her death or its seizure by her creditors; but the question here is, was it good after her death as against the creditors of Jennie Pine in the state of Ohio? Section 7913--72, of the Revised Statutes, provides:

"That in all cases where any personal property shall be sold to any person, to be paid for in whole or in part in installments, or shall be leased, rented, hired or delivered to another on condition that the same shall belong to the person purchasing leasing, renting, hiring or receiving the same whenever the amount paid shall be a certain sum, or the value of such property, the title to the same to remain in the vendor, lessor, renter, hirer or deliverer of the same, until such sum or the value of such property, or any part thereof, shall have been paid, such condition, in regard to the title so remaining until such payment, shall be void as to all subsequent purchasers and mortgagees in good faith, and creditors, unless such condition shall be evidenced by writing, signed by the purchaser, lessor, renter, hirer or receiver of the same, and also a statement thereon, under oath, made by the person so selling, leasing or delivering the property, as herein provided, his agent or attorney, of the amount of the claim, or a true copy thereof, with the affidavit, that the same is a copy, deposited with the clerk of the township where the person signing the instrument resides at the time of the execution thereof, if a resident of the state; and if not such resident, then with the clerk of the township in which such property is sold, leased, rented, hired or delivered, is situated at the time of the execution of the instrument."

It is claimed by the plaintiff that under the law of comity we ought to enforce a contract in Ohio which is perfectly good between the parties in West Virginia, where it was entered into; in other words, if this lease or contract of conditional sale has been executed and recorded in West Virginia, and the same is valid there, and the vendor permits the vendee to bring the property into Ohio, there to remain permanently, the instrument ought to be good and enforced against the administrator, at least, who is but the personal representative of the party.

It is claimed by counsel for plaintiff in error that the law of comity between states ought to be extended that far. The law of comity, as we understand it, in the enforcement of contracts in courts where the remedy is sought, should be enforced to this extent only; that if the contract is not contrary to the law of the state where it is sought to be enforced, then, as a matter of comity, it will be enforced, by the court. In other words, if it does not contravene the rule of the court, or the acts of the legislature, in the state where it is to be enforced, then as a matter of comity, it will be enforced, as well in the state where the remedy is sought as in the state where it is made. But if the contract is in contravention to the law of the state as administered between its own citizens, then it will not

be enforced between parties coming from another state and undertaking to enforce it, as the law of contracts between them here ; and especially where it conflicts with rights of our own citizens as required under our own laws. To enforce this contract here, as against the administrator of the insolvent estate, who simply represents the creditors, would be giving to the statute of West Virginia greater force than to our own. The vendor in this case permitted the property to be taken into this state, when by the terms of his lease, he could have prevented such action; and if he has chosen to do so, he must, in order to retain or preserve his lien, take the necessary steps required by the statutes of Ohio, to make the contract a valid lien upon the property as against creditors, mortgagees and purchasers in good faith. This is the doctrine laid down in the case of *Harvey* v. *The Rhode Island Locomotive Works*, 92 U. S., 664, which is one of the leading cases on the subject, and which has since been approved by the court more than once. I think the gist of the decision is contained in the syllabus of the case, and I shall therefore content myself with reading the same, as the case itself is of some length. The court says :

"2. The real owners of personal property, who vest another, to whom it is delivered, with an interest therein, must, if desirous of preserving a lien on it in Illinois, comply with the requirements of the chattel mortgage act of that state.

"3. Where personal property has been sold and delivered, secret liens, which treat the vendor as its owner until the payment of the purchase money, cannot be maintained in Illinois. They are held to be constructively fraudulent as to creditors, and the property, so far as their rights are concerned, is considered as belonging to the vendee holding the possession.

"4. Nor is the transaction changed by the agreement assuming the form of a lease. The courts look to the purpose of the parties; and if that purpose be to give the vendor a lien on the property until payment in full of the purchase money, it is liable to be defeated by creditors of the vendee who is in possession of it.".

The court, in the opinion on pages 673 and 674, says :

"In the case at bar, the agreement (made and entered into the state of Connecticut) contemplated that the engine should be removed to the state of Illinois, and used by Conant & Co., in the prosecution of their business as constructors of a railroad. It was accordingly taken there, and put to the use for which it was purchased; but while in the possession of Conant & Co., who exercised complete ownership over it, it was seized and sold, in the local courts of Illinois, as their property.

"——The Rhode Island Locomotive Works took the risk of losing its lien in case the property while in the possession of Conant & Co., should be levied on by their creditors, and it cannot complain, as the laws of Illinois pointed out a way to preserve and perfect its lien."

Now, this case, it seems to us, settles the matter, if we take it into consideration the statute in force in Ohio, requiring the filing of conditional sales, either in the office of the recorder, if a city where the recorder's office is situated, or else with the township clerk. Now, can Jones come into Ohio and enforce this mortgage, conditional sale, lease, or whatever he calls it, against the creditors of the party, after permitting her to bring the property into this state, to remain here permanently ? To permit him to do so, against her creditors, mortgagees and purchasers in good faith, would be giving greater effect to the statute of West

Virginia than to our own; in other words, it would be giving an effect to the statute of West Virginia directly contrary to the express provisions of our statute, and would be allowing the parties, by the verbal contract made May 25, 1893, in Huntington, W. Va., to avoid the law of Ohio in regard to conditional sales of personal property. We think that cannot be done, and the supreme court of the United States hold that it is not the rule.

The plaintiff in error relies on the case of *Kanaga* v. *Taylor*, 7 Ohio St., 134; but in that case, the property was taken into Ohio without the knowledge or consent of the mortgagee, and before the mortgage had become absolute, and as soon as he learned of its location, he proceeded within a reasonable time to enforce his claim on the same under the contract made in New York; but this case is different; here the property was taken into this state with the full knowledge and consent of Jones, and the doctrine announced by the court in *Harvey* v. *The Rhode Island Locomotive Works*, applies to the case at bar.

2. The next question is one that seems to us to be of a more serious nature than the other, and that is the question of whether or not, when Jones could have taken this property on replevin from Jennie Pine in her lifetime—whethr or not the personal representative, having the right simply of Jennie Pine in the property, could have any higher claim upon it than Jones. But on this question we have no trouble; our supreme court, in the case of *Kilbourne* v. *Fay*, 29 Ohio St., 264, has expressly decided that question, holding that he cannot; the reason given by the court being, that the personal representative, after the demise of the party, simply represents the creditors, and does not represent the party or the distributees, and that he stands as the representative of the creditors, and has the right to demand that the property be administered in the same manner as if they had taken legal proceedings against the party in his lifetime, and had acquired a lien thereon.

The court, in the syllabus of the case, says:

"1. Where a chattel mortgage is declared void by the statute, as against the creditors of the mortgagor, and the mortgagor dies in possession of the mortgaged property, leaving an insolvent estate, such property becomes assets in the hands of the executor or administrator of the mortgagor, whose duty as well as right, is to defend his possession, against the claim of the mortgagee, notwithstanding such mortgage was valid as against the mortgagor."

And then, on page 284, the court further says:

"After a careful consideration of these cases, a majority of the court, both upon authority and reason, hold, that where a chattel mortgage is absolutely void as against the creditors of the mortgagor, who dies in possession of the mortgaged property, leaving an insolvent estate, such property becomes assets in the hands of his executor or administrator, to be administered for the sole benefit of such creditors, and disbursed ratably among them, notwithstanding such mortgage be a valid lien against the mortgagor during his lifetime, and against the distributees of his estate after his death, and that it is the duty, as well as the right of such executor or administrator to defend his possession of such property against the claim of such mortgagee."

The same doctrine is substantially announced in the case of *Hanes* v. *Tiffany*, 25 Ohio St., page 549. We see no error in the charge of the court, and the judgment of the common pleas court will be affirmed.

*Jonathan S. Dodge*, for the Plaintiff.

*Evans & Livingstone*, for the Defendant.