(91 South. 618)

**REICHERT v. JEROME H. SHEIP, Inc.**
(1 Div. 192.)

(Supreme Court of Alabama. Oct. 13, 1921. Rehearing Denied Nov. 17, 1921.)

1. **Evidence** ⊙�señ458—Proof of surrounding facts and circumstances must relate to time of execution of conveyance.

Parol and other proof as to surrounding facts and circumstances must relate to the time of the execution of the conveyance.

2. **Evidence** ⊙�señ452, 461 (1)—Parol evidence admissible to explain ambiguity but not to import unexpressed intention.

Parol evidence is admissible to explain an ambiguity that does not appear on the face of the writing, but not to import into the writing an intention not expressed therein.

3. **Deeds** ⊙�señ118—Extrinsic evidence held insufficient to impute intention to convey inchoate right to subsequently patented land.

In ejectment by one claiming under a patent to representatives of a former owner, a report of the General Land Office confirming their claim to land, the description of which was indefinite and the quantity and length of occupancy unknown, and a land office map showing a survey thereof, *held* insufficient in connection with Act Cong. May 8, 1822, §§ 3, 4, authorizing grants of land actually inhabited or cultivated on or before April 15, 1813, by persons whose claims thereto were comprised in the lists reported by the registers, to impute to the heirs of such former owner an intention to transfer, by an ordinary warranty deed purporting to convey two tracts of land for a recited consideration, an inchoate right to whatever land the government might thereafter grant to grantees; such deed, though void for uncertainty of description, disclosing an intent to convey a specific body of land with a present title thereto.

4. **Adverse possession** ⊙�señ7(3)—Public lands ⊙�señ114(6)—No prescription as to grant prior to issuance of patent; proof of adverse possession prior to issuance of patent held inadmissible.

In ejectment by one claiming under a patent issued in 1911, proof of adverse possession by defendants since 1870 was inadmissible, as the issuance of a patent rebuts any presumption that one was issued prior thereto, and prescription does not run against a grant of land, title to which was in the government during the period of prescription.

5. **Pleading** ⊙�señ127(2)—Allegation that parents, though "living together as man and wife," were never married, held not an admission they were not man and wife.

In ejectment by one claiming under the heirs of a former owner, where defendant offered in evidence proceedings for the sale of land belonging to such owner's son, who the petition alleged died without lawful heirs, for the purpose of proving that his father's children were illegitimate, the answer of deceased's brothers and sisters consenting to the sale, if, their parents having never married, "though they lived together as man and wife," they were heirs, did not admit that their parents were not man and wife; the expression "living together as man and wife" indicating more than mere cohabitation and including a recognition by each of the relationship of common-law marriage.

6. **Evidence** ⊙�señ208(4)—Unsworn answer signed only by counsel held inadmissible admission.

In ejectment, where defendant to prove the illegitimacy of a former owner's children, under whom plaintiff claimed, offered in evidence a proceeding for the sale of land belonging to his son, who the petition alleged died without lawful heirs, an unsworn answer, signed only by counsel for deceased's brothers and sisters, stating that their parents, though living together as man and wife, never married,

---

was not admissible as an admission of illegitimacy.

Appeal from Circuit Court, Baldwin County; John D. Leigh, Judge.

Action by Jacob H. Reichert against Jerome H. Sheip, Incorporated. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Harry T. Smith & Caffey, of Mobile, for appellant.

The court erred in admitting the deeds from the heirs of Duret to Smith and Coke, because of the insufficiency of the description. 188 Ala. 543, 66 South. 188. The court erred in admitting the report of the commissioners as it appears from the American State Papers and the certificate of survey by Deputy Surveyor John James. 187 Ala. 350, 65 South. 796; 198 Ala. 333, 73 South. 519, L. R. A. 1917C, 469. This report fails to show an inchoate right in the heirs that could be assigned. 35 Ala. 571, 76 Am. Dec. 307; 42 Ala. 255, 94 Am. Dec. 646; 71 Ala. 271; 114 Ala. 277, 21 South. 786; 131 Ala. 224, 31 South. 77; 195 Ala. 194, 70 South. 270; 115 Ga. 874, 42 S. E. 246; 106 Me. 85, 75 Atl. 320; 155 Mass. 171, 29 N. E. 524, 15 L. R. A. 231. The description determined nothing, either as to starting point or as to boundary. 17 How. 403, 15 L. Ed. 110; 18 How. 457, 15 L. Ed. 435; 13 Wall. 480, 20 L. Ed. 698. It does not appear that the survey was finally approved by the Land Department at Washington, and for this reason it was not operated. 95 U. S. 33, 24 L. Ed. 351. It follows, therefore, that the court erred in directing a verdict for the defendant. The court erred in admitting the map offered by the defendant. 187 Ala. 350, 65 South. 796. The statute of limitations and adverse possession cannot run against the patentee or his assignee, until the issuance of the patent. 113 Ala. 207, 20 South. 972; 190 Ala. 563, 67 South. 249; 117 Ala. 250, 22 South. 997; 128 Ala. 423, 29 South. 579; 159 Ala. 629, 49 South. 248; 177 Ala. 130, 59 South. 157. Unsworn pleadings filed by an attorney in the cause is not admissible in evidence in another case as an admission by their client. 72 Ala. 96; 123 Ala. 113, 26 South. 245, 82 Am. St. Rep. 108; 7 Port. 73; 30 Ala. 602.

Stevens, McCorvey, McCloud & Goode, of Mobile, for appellee.

The Supreme Court of the United States has clearly stated the law applicable to the situation raised by the contents of the patent in this case, in that it was issued to the representatives of Duret and to their heirs. 2 Wall. 605, 17 L. Ed. 854; 4 Gill (Md.) 493, 45 Am. Dec. 171; 15 Ill. 573; 8 Smedes & M. (Miss.) 275. The deeds from the children of the original claimant to Smith and Coke operated as a conveyance or assignment of their then claim to the land in question. 200 Ala. 126, 75 South. 574. The report of the commission, American State Papers, was confirmed by the third section of Act May 8, 1822. 3 Stat. 707. The maps and plats were admissible under section 3983, Code 1907, and the field notes were admissible under section 3984, Code 1907. As soon as Congress confirmed the claim of the representatives of Duret, they obtained a claim which was clearly assignable. 2 Wall. 605, 17 L. Ed. 854; 159 U. S. 463, 16 Sup. Ct. 57, 40 L. Ed. 215; 186 Ala. 143, 65 South. 170. These authorities also uphold the contention that the statute of limitations and adverse possession had run against the plaintiff. The answer of the attorney, in the other case was admissible here. 22 C. J. 335; 144 Mass. 409, 11 N. E. 672; 135 Mass. 30; 4 Ala. 227; 7 Port. 85. No common-law marriage is shown. 119 Ala. 637, 24 South. 374. It therefore appears that the court properly directed a verdict for the defendant.

GARDNER, J. Suit in ejectment by appellant against appellee for the recovery of section 43, in township 1 north, range 1 east, Baldwin county, Ala. Upon the conclusion of the testimony in the cause the court gave the affirmative charge at defendant's request, and from the judgment following the plaintiff prosecutes this appeal.

The plaintiff offered in evidence a patent from the United States government to the representatives of one Louis Duret, which was issued on December 14, 1911, less than ten years before the commencement of this suit. Louis Duret died intestate, and the identity of his heirs was proven by Anna Leland, to whom the heirs executed power of attorney. The land was then conveyed by Anna Leland to Max Collins, who in turn conveyed it to the plaintiff. Upon the first trial of this cause this deed was excluded by the trial judge for various reasons, but upon appeal to this court the rulings were held to be erroneous, and the cause reversed. Reichert v. Sheip, 204 Ala. 86, 85 South. 267. The questions upon former appeal are without influence upon those now presented.

Upon the second trial the affirmative charge was given to the defendant, evidently upon the theory that the several matters offered in evidence by the defendants, over the objection of the plaintiff, were sufficient to overcome the plaintiff's case. The admission of this documentary evidence, as well as parol proof, is ably and elaborately argued by counsel for the respective parties in the cause; but the court is persuaded, after a careful consideration of this record, that the questions here for determination may be brought within a very narrow compass, and these will now be briefly treated.

The court admitted in evidence for the defendant, against plaintiff's objection, a con-

veyance from the heirs of Louis Duret to Walter Smith and J. H. Coke, executed February 2, 1831. The description contained in this deed reads as follows:

"A certain tract or parcel of land lying, being and situate in the county of Baldwin, described as follows, to wit: 'Beginning opposite the fork or junction of the Rivers Tensaw and Mobile and extending down the Tensaw river on the east side thereof to a bayou or creek and thence running back so far as to include six hundred and forty acres;' also one other tract or parcel of land, lying, being and situate in the county aforesaid and described as follows, to wit:. 'Beginning on the south side of the first bayou or creek which lies below the fork or junction of the Tensaw and Mobile rivers thence running down the River Tensaw on the east side thereof, the distance of one mile, thence running back so far as to include six hundred and forty acres.' "

It is conceded that this conveyance did not operate to convey any particular land on account of the uncertainty of its description, but it is insisted that it was admissible upon the theory that the deed operated as an assignment of an alleged inchoate right which the heirs of Louis Duret had acquired to demand from the government a patent covering the land here sued for, by virtue of a report of the register and receiver of the General Land Office of July 11, 1820, appearing in the American State Papers. The report is upon a blank for that purpose, and in so far as it concerns the question here is as follows:

bile river. This map contains a certificate by the Surveyor General, as follows:

"The above map of township 1 north, range 1 east, is a true copy of the original on file in this office, which has been examined and approved, representing the private claims and their connections with the public surveys as finally settled by the register and receiver of the land office of St. Stephens, Ala., acting as commissioners for the settlement of private land claims under authority of the Act of Congress approved 1822, the 8th of May. The Surveyor's Office, Florence, Alabama, 19th May, 1845. Examined and approved, James H. Weakley, Surveyor General, of the Public Lands in Alabama."

The defendant also offered in evidence a deed by one Seawell to John Cooper and Christian Becker, dated January 26, 1870, purporting to convey the land in question, and a like deed of the same date from Frank David to said Cooper and Becker. Also, proceedings showing a partition of the land owned jointly by said Cooper and Becker; a certified copy of the last will of said Christian Becker, the decree of the probate court bearing date January 30, 1906; said will devising all the property of the testatrix to Fannie I. Becker, one of the defendants in this cause. Defendants also introduced a number of witnesses who testified to actual possession and occupancy by the defendants of the land in question from the year 1876 to the date of trial.

The map offered in evidence showing a

| "No. By Whom Claimed | Original Claimant | Quantity Claimed | Where Situated | Inhabitation Cultivation. |
|---|---|---|---|---|
| 2 Reps. of Louis Duret | John B. Te de Lusser | unknown | Opposite Tensaw and Mobile rivers | From 1791 How long continued unknown. |
| 3 Reps. of Louis Duret | Louis Duret | unknown | Junction of Mobile & Tensaw rivers | Under British & Spanish Govs. and until year 1791." |

In a column headed "Remarks by Register," there appears opposite to the entries with respect to all of the claims there dealt with the following:

"Though the original grants upon which the preceding claims are founded have been lost, yet it is conceived that the claims to such land as have been inhabited and cultivated under the Spanish government, or which was inhabited and cultivated under the British government by the person having the legal title therein at the date of the treaty of September 3, 1783, between Great Britain and Spain, or which was sold and conveyed according to the provisions of the treaty, should be confirmed for quantity equal to that allowed settlers."

The defendant also introduced, over the objection of plaintiff, a certified copy from the General Land Office of Washington, D. C., of a plat or map of all that part of township 1 north, range 1 east, lying east of Mo-

survey of the lands in that section, which included that here in controversy, it is insisted should be considered in connection with the provisions of the Act of May 8, 1822 (3 U. S. Stat. 707), and with particular reference to section 3 thereof. This section reads as follows:

"Sec. 3. And be it further enacted, that every person, or his or her legal representative, whose claim is comprised in the lists or registers of claims reported by the registers and receivers, and the persons embraced in the lists of actual settlers, or their legal representatives, not having any written evidence of claim reported as aforesaid, shall, when it appears by the said reports, or by the said lists, that the land claimed or settled on had been actually inhabited or cultivated by such person or persons in whose right he claims, on or before the fifteenth day of April, one thousand eight hundred and thirteen, be entitled to a grant for the land so claimed or settled on as a donation:

Provided, That not more than one tract shall be thus granted to any one person, and the same shall not contain more than six hundred and forty acres; and that no lands shall be thus granted which are claimed or recognized by the preceding sections of this act, or by virtue of a confirmation under an act, entitled 'An act for adjusting the claims to land, and establishing land offices, in the districts east of the Island of New Orleans,' approved on the third day of March, eighteen hundred and nineteen: And provided, also, that no claim shall be confirmed where the quantity was not ascertained, and report made thereon by the registers and receivers, prior to the twenty-fifth day of July, one thousand eight hundred and twenty."

The succeeding section provides for the survey, giving authority to the register and receiver of the respective districts to direct the manner in which all lands claimed by virtue of the preceding section shall be located and surveyed, and in case of conflict gives them the authority to decide between the parties. It is to be noted that the act in question was to make provision for a grant of land actually inhabited or cultivated on or before April 15, 1813; and that the report offered in evidence discloses that the quantity claimed was unknown, and with no more definite description than that it was opposite the Tensaw and Mobile rivers, and that the length of occupancy or cultivation was also unknown. It is also to be noted that the conveyance by the heirs of Louis Duret to Smith and Coke, relied upon by defendant, was a warranty deed, in usual form, purporting to "grant, bargain, sell, convey and confirm unto the said parties of the second part, and to their heirs and assigns forever, a certain tract or parcel of land, lying, being and situate in the county of Baldwin, and described as follows, to wit:" Here follows the description previously set out. This conveyance describes not only one tract of land of 640 acres, but likewise another. The explanation of this, offered by counsel for defendant, is that claim No. 2, as shown in the report, was by the representatives of Louis Duret, and under the title of the original claimant, John B. Te de Lusser; and it is argued that this claim had been acquired by Louis Duret, and that by this conveyance these heirs intended to transfer their inchoate right to these two bodies of land. As to any claim of De Lusser, the foregoing is all that this record discloses.

Reduced to its last analysis, the argument of counsel for appellee is that the conveyance from the heirs of Louis Duret, dated in April, 1831, to Smith and Coke, was void for uncertainty of description, and that the report of the register and receiver offered in evidence, as well as the survey made several years subsequent thereto, in connection with the Act of May 8, 1822, are sufficient to show an intention on the part of the grantors therein to transfer to the grantees named

their inchoate right to have issued a patent to the land in question; that the patent in this case showed on its face it was issued to the representatives of Louis Duret, and that the word "representatives," so used, includes representatives by contract as well as by operation of law, and such patent inures to the benefit of and vests the legal title in the owner of the claim at the time of the issuance of the patent. In support of which is cited the case of Hogan v. Page, 2 Wall. 605, 17 L. Ed. 855.

It is further insisted that therefore, if the ancestors of those under whom plaintiff claims by inheritance and purchase made a valid conveyance of the claim to the land before the issuance of patent, then the patent inured to whomsoever was the holder of the claim, and therefore the title conveyed by the patent did not vest in those under whom the plaintiff claims; and that, while defendants have not been able to trace their title back to Smith and Coke, yet, as plaintiff must recover upon the strength of his own title, it matters not in whom rests the true title.

[1, 2] However, we are not persuaded that the conveyance to Smith and Coke, in the light of the facts and circumstances offered in evidence by defendant, can be so construed as here contended. It was a plain, ordinary warranty deed, purporting to convey two separate tracts of land, having a ▸recited consideration. There is nothing whatever in the language of this deed giving any intention to convey an inchoate right, but evidences a plain intention to convey a present title. While it is conceded to be void for uncertainty of description, yet it contains a definite starting point with certain directions plainly indicating on the part of the claimants an intention to convey particular tracts of land. When parol and other proof is offered as to surrounding facts and circumstances, it must, of course, bear relation to the time of the execution of the conveyance. There is nothing in this record indicating that the claimants at that time were in possession of this land, or what land their ancestors had in fact inhabited or cultivated; and the report itself shows the quantity was unknown, with no more definite description than it was opposite Mobile and Tensaw Rivers—a very general and indefinite statement it must be conceded. A few excerpts from the authorities will, we think, disclose that the contention of the defendant does not square with the well-recognized principle concerning the construction of written instruments. In Guilmartin v. Wood, 76 Ala. 209, the court said:

"In the construction of written instruments, the 'general rule excludes any direct evidence of the intention of the parties, except such as is furnished by the writing itself, when considered in the light of the surrounding facts and circumstances. Parol evidence is admissible,

to explain an ambiguity that does not appear on the face of the writing, but arises from some extrinsic, collateral matter—to point out, and connect the writing with the subject-matter, and to identify the object proposed to be described. 'Such evidence is received, not for the purpose of importing into the writing an intention not expressed therein, but simply with the view of elucidating the meaning of the words employed; and in its admission, the line which separates evidence which aids the interpretation of what is in the instrument, from direct evidence of intention independent of the instrument, must be kept steadily in view; the duty of the court being, to declare the meaning of what is written in the instrument, not of what was intended to be written.' "

In Hughes v. Wilkinson, 35 Ala. 453, speaking of the introduction of parol proof showing surrounding facts and circumstances in view of a written contract, it was said:

"It is true that, for the purpose of enabling the court to arrive at the intention expressed in the writing, and to make a correct application of the words of the instrument to the subject-matter thereof and the objects proposed to be described, all the surrounding facts and circumstances may be proved. In other words, the court may, by admitting in evidence the extrinsic circumstances under which the writing was made, place itself in the situation of the party who made it, and so judge of the meaning of the words, and of the correct application of the language to the things described. Such evidence is received, not for the purpose of importing into the writing an intention not expressed therein, but simply with the view of elucidating the meaning of the words employed; and in its admission, the line which separates evidence which aids the interpretation of what is in the instrument, from direct evidence of intention independent of the instrument, must be kept steadily in view—the duty of the court being to declare the meaning of what is written in the instrument, not of what was intended to be written."

In Elec. Light. Co. v. Elder Bros., 115 Ala. 149, 21 South. 986, is the expression, "Construction is the building up with given elements, not the forcing of extraneous matters into the text." To like effect, see Pieme v. Arata, 202 Ala. 427, 80 South. 811; Sullivan v. L. & N. R. Co., 138 Ala. 662, 35 South. 694; Blackman v. Dowling, 63 Ala. 306; Sanford v. Howard, 29 Ala. 684, 68 Am. Dec. 101. In 6 R. C. L. 853, is found the following:

"It must not be supposed, however, that an attempt is made to ascertain the actual mental processes of the parties to a particular contract. The law presumes that the parties understood the import of their contract, and that they had the intention which its terms manifest. It is not within the function of the judiciary to look outside of the instrument to get at the intention of the parties, and then carry out that intention regardless of whether the instrument contains language sufficient to express it; but their sole duty is to find out what was meant by the language of the instrument. This language must be sufficient, when looked at in the light of such facts as the court is entitled to consider, to sustain whatever effect is given to the instrument. Taking into consideration this limitation, it may be said that the object of all rules of interpretation is to arrive at the intention of the parties as it is expressed in the contract. In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used."

The principle recognized in • these authorities was applied with great strictness in the case of Lewis v. McBride, 176 Ala. 134, 57 South. 705, where the court said:

"But can we infer that, because a party making a quitclaim deed has no interest in the property named, he intended to convey something else, not named in the paper? We think this would be a dangerous principle to assert, and we therefore hold that the instrument in question was not an assignment of the statutory right of redemption."

[3] To impute to the grantors of the deed in question an intention to transfer an inchoate right to whatever land, of an unknown quantity, the government might thereafter see fit to grant to them, would, we think, be contrary to the express language of the deed. This deed did not purport to convey an inchoate interest in an unknown body of land, but, as before stated, discloses an intent to convey a specific body of land, and the grantors warranted therein they had title and would defend it against all lawful claims. There is nothing in this record to show that the grantors in that deed in fact knew they had no legal title or present interest in the property they purported to convey, but the recitals in their deed indicate to the contrary. Proof of extrinsic collateral matter is admissible by way of elucidating the meaning of the language used in the instrument; and, as said in some of the authority, is not for the purpose of injecting into the writing an intention not expressed therein.

Counsel for appellee rely upon the recent case of Alabama Corn Mill. Co. v. Alabama Docks Co., 200 Ala. 126, 75 South. 574. That case dealt with the question of easement, the location of which may be, under given circumstances, fixed by a court of equity, and the conveyance there under consideration expressly provided that it was intended to convey a right of way across square 365. There was an express statement of the purpose to grant a designated right over a particular tract of land, and an effort to describe the particular strip of one hundred feet wide in order to designate the same; but the description was faulty. The effect of the holding was that the mere failure of the parties to describe the particular strip did not invalidate the plainly expressed purpose to convey a right of way over that defined area, and that this general purpose, which was clearly expressed, was not destroyed by the

ineffectual attempt at description. We are of the opinion that the insistence made in the instant case does not find support in that authority.

Further discussion might be indulged to demonstrate the fallacy of appellee's position, but we deem it unnecessary. The argument of appellee's able counsel may appear plausible upon first consideration, but upon mature deliberation it does not, in our opinion, square with the principle recognized in the decisions—a departure from which would lead into an unsafe pathway.

[4] Defendant offered proof tending to show adverse possession for a long number of years, from 1870 to the time of the trial; and counsel for appellee have argued with much vigor the admissibility of this proof upon the theory of prescription, and the presumption of a grant, with citation of authority.

The patent in the instant case was issued in 1911, and this precise question was presented in the recent case of Nelson v. Weekley, 195 Ala. 1, 70 South. 661, where the court, in answering a like argument, said:

"Therefore if the presumption was ever prima facie established, it was completely overcome when title was shown to be in the government during the time covered by the possession and the issuance by the government of a patent in 1908, rebuts any presumption that one was issued prior thereto. Where title appears to have been in the government during the period of prescription, the prescription does not run against the government."

The conclusion is to be reached therefore from the foregoing consideration that the court erred in giving the affirmative charge for the defendant, and that on the contrary the plaintiff is entitled thereto.

[5] One other question, however, calls for consideration in view of the reversal of the cause. As previously stated, the plaintiff claimed title under the heirs of Louis Duret, who had been identified by the depositions of Anna Leland. The defendant offered in evidence proceedings in the administration of the estate of Regis Duret, son of Louis Duret, for the sale of another piece of real estate owned by him during his life. This proceeding did not concern the land involved in this suit, but was offered in evidence for the purpose of proving that the children of Louis Duret were illegitimate; the theory being that Louis Duret and the woman with whom he lived, and by whom he begot children (under whom the appellant claimed), were never lawfully married. The petition for the sale of the land in the administration of the estate of Regis Duret alleged that Regis Duret died without lawful heirs, and the answer which was filed by F. B. Deshon, attorney, after admitting the formal allegation of the petition, proceeded:

"And the facts stated in said petitioner's petition are true, so far as these respondents know or believe, except the allegation to said petition that the petitioner's intestate died without lawful heirs, of the truth of which, these respondents are not advised; these respondents being the brothers and sisters of said intestate, by the same father and mother, who though they lived together as man and wife, were never married, and if the operation of the law, on these facts, constitute them heirs of the said intestate they relinquish all their right as such to the real estate, in said petitioner's petition, and are willing the same should be sold, for the purpose in said petition set forth."

This answer was admitted upon the theory it conceded on the part of these particular heirs that their ancestors were not man and wife, and that their children were illegitimate, thus creating a conflict in the testimony as to the legitimacy of the heirs claiming under Louis Duret. We are not prepared, however, to concede that the answer in question in fact contained an admission on the part of the attorney that the father and mother of his clients were not man and wife. On the contrary, we are rather persuaded that the natural construction of this answer is that the father and mother had lived together as man and wife, but no ceremony of marriage had been performed, and the attorney merely intended to submit to the court the question of whether living together as man and wife constituted marriage or whether a formal ceremony was essential to the legitimacy of the children. We are of the opinion that the expression "living together as man and wife" indicates something more than mere cohabitation, and includes a recognition by each of the relationship of common-law marriage.

[6] But, aside from this, we are of the opinion the proceeding was not admissible for the purposes indicated. It was an unsworn answer, signed only by counsel. In the recent case of State v. A. C. L. R. R. Co., 202 Ala. 558, 81 South. 60, speaking of this question, the court said:

"With respect to No. 2, it is to be noted that mere formal pleadings, which are framed by counsel for the purposes of a particular case, are not admissible against a party in another proceeding as admissions of the facts recited. 'But if the pleadings are shown to have been drawn by the express direction of the party in whose behalf they are filed, and any statements of fact therein contained to have been inserted by his direction or with his assent, the pleadings are admissions of the facts therein contained as against such a party in subsequent cases.'"

See, also, 10 C. I. & R. Co. v. Linn, 123 Ala. 112, 26 South. 245, 82 Am. St. Rep. 108; Ex parte Payne Lumber Co., 203 Ala. 668, 85 South. 9; Cooley v. State, 55 Ala. 162; Charlie's Trans. Co. v. Leedy, 9 Ala. App. 652, 64 South. 205; Callan v. McDaniel, 72 Ala. 102.

Some of the members of this court were of the opinion that the conclusion reached in

Richardson v. State, 204 Ala. 124, 85 South. 789, was out of harmony with our former decisions on this question; but the majority of the court were of the opinion that the result in that case was not in conflict with the rule established by these authorities, as pointed out in Ex parte Payne Lumber Co., 205 Ala. 259, 87 South. 876. A discussion, therefore, of the points of differentiation of the Richardson Case with these other decisions is unnecessary. Under these authorities, therefore, the formal pleading of the attorney in this cause could not be accepted as establishing an admission of a statement of fact binding upon the parties in this proceeding, and the court erred in its admission.

The judgment is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.