## ALEXANDER CHAPUT et al., Appellants, v. GEORGE PICKEL.

### Division One, May 31, 1913.

1. **LIVRE TERRIEN: Made in 1768 by St. Ange.** A grant of land lying within the present limits of St. Louis, made in 1768, by St. Ange or Labuxiere, or both of them, unless confirmed by the authority of the Spanish government, was invalid and void; and though it appear as a part of the book "Livre Terrien" in the office of the Secretary of State it will not be held to have conveyed any title to the named grantee, unless it be shown that the Spanish government confirmed the attempted and otherwise unauthorized and illegal grant. St. Ange, who had been the lieutenant of the French government in Illinois prior to the treaty of 1763, ceding the country east of the Mississippi River to Great Britain and that west of it to Spain, after that treaty, crossed over to St. Louis, and supposing the territory west of the river still belonged to France made grants of land as he had formerly done, but he had no authority to do so, and while the Spanish government confirmed some grants made by him, yet it has been uniformly held that none of his grants are to be considered legal unless such confirmation is shown.

2. ————: ————: **Copies Evidence.** While it is provided by statute that copies of the contents of the land book called "Livre Terrien" in the office of the Secretary of State are admissible in evidence, yet the statute also expressly states that the copies are admissible "with like effect as the original;" and if an original grant found in that book, or elsewhere, is invalid and for that reason inadmissible in evidence, because made by St. Ange and not confirmed by the Spanish government, so is the certified copy inadmissible.

3. **GOVERNMENT PATENT: To Representative: Not Shown to be in Esse.** Where plaintiffs claim title through a Government patent to the "representative" of Joseph Calve, who had been dead fifty years at the time the title emanated from the Government in 1845, and they totally fail to show that his daughter, under whom they claim, was his representative and entitled to some interest in the land, or that she was alive at the time the patent issued, an essential link in their chain of title is missing, and they cannot recover in ejectment upon their independent paper title alone.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.


AFFIRMED.


*Christian E. Schneider* for appellants.


(1) It was error on the part of the court to sustain the objection of the respondents to the introduction of the certified copy of the grant to Calve. Secs. 6302, 6341, R. S. 1909; Wright v. Thomas, 4 Mo. 575; Finn v. Public Schools, 23 Mo. 570, 39 Mo. 59. (2) The court below further erred in giving the peremptory instruction at the close of plaintiff's case, for under the evidence and proofs admitted at the trial without objection appellants had made out a prima-facie case. Appellants proved by testimony of witnesses Octavia Jeroux, Sylvain Spanle, Charles Tourville and Nancy Chaput that they were heirs of one Joseph Calve. Appellants introduced without objection "American State Papers, vol. 3, p. 279, which showed that the lands in question were confirmed to Joseph Calve's representatives. Also map and field notes of Survey 1583, and entry of patent certificate. These were competent under what are now Secs. 6301a, 6313, 6314 and 6317, R. S. 1909. Mr. Mechin's testimony showed the ground in question was in U. S. Survey No. 1883. It was therefore error to instruct the jury: "The court instructs the jury that upon the evidence adduced the plaintiffs are not entitled to recover." The defendants' answer was a general denial and what is known as the ten-year Statute of Limitations. The testimony adduced did not sustain either of these grounds and the instruction given by the court above referred to ought not have been given.

*George W. Lubke* and *George W. Lubke, Jr.,* for respondents.

(1) No error was committed by the trial court in excluding from the evidence the copy certified by the Secretary of State May 3, 1907, from "Livre Terrien No. 1," purporting to have been signed by St. Ange-Labuxierre, April 30, 1768, as a concession to Joseph Calve of 2x40 arpents in the Grand Prairie on one side of the Widow Marechal and on the other by the Little River, and on condition that he establish the same within the year. (a) St. Ange and Labuxierre had no authority to make concessions previous to 1769. They bore no other character than that of private citizens "of some influence and distinction" and in signing assumed to themselves no title. And the record of any such in Livre Terrien No. 1 was not admissible in evidence. Wright v. Thomas, 4 Mo. 585. The statute which made copies "of all petitions, grants, orders and returns of surveys and other evidences of title contained in any land book called Livre Terrien," certified by the Secretary of State, competent evidence did not also make the copy competent evidence to show the genuineness of the original or of the authority of the party whose signature appeared to the purported grant. R. S. 1909, sec. 6302. (b) No proof was offered to show that the condition of the purported grant had been performed. The wording of the condition as translated was "that he establish the said land under the year," meaning, no doubt, that Calve was required within the year to identify and possess himself of the 2x40 arpents in the Grand Prairie between the holding of the Widow Marechal and the Little River. (c) And if as a concession granted by St. Ange and Labuxierre "as private citizens of some influence and distinction," some consideration was given to it later by the United States authorities (as stated in Wright v. Thomas, 4 Mo. 577), when the Recorder of Land Titles made the confirma-

tion to Joseph Calve's "representatives," shown by the American State papers, and ordered the survey which Surveyor Brown made in 1835 and numbered 1583, which was followed May 24, 1845, by the issuance of the patent certificate to Joseph Calve's "representatives," which he delivered to Mr. Schible, then this St. Ange-Labuxierre concession became merged in the patent and the surveyor's certificate and the recorder's patent certificate became the best evidence. (2) There was also no error committed by the trial court when the judge gave to the jury the instruction that plaintiffs were not entitled to recover upon the evidence adduced, and later refused to set aside the nonsuit and denied plaintiffs a new trial. (a) There was nothing in the pleadings or in the evidence to identify the lots 7 and 8 of city block 3737 described in plaintiffs' petition as being within survey 1583, the Calve tract, or that the John E. Cook subdivision, in whole or in part, formed part of that tract. This was a material fact necessary to be found by the jury to entitle plaintiffs to a verdict and without evidence to support it the instruction that plaintiffs were not entitled to recover was correctly given. The evidence must identify the property sued for. Sanford v. Herron, 161 Mo. 176; Jackson v. Hardin, 83 Mo. 186; Reichenbach v. Ellerbe, 115 Mo. 588; Hite v. Railroad, 130 Mo. 132. (b) The Louisiana Purchase vested the Calve tract in the United States and it remained there until the confirmation and survey were made in 1835 and the issuance and delivery to Mr. Schible in 1845 of the patent certificate in favor of Joseph Calve's "representatives." Calve was then no longer living. He died before 1800, and having no title at his decease, none could pass to his heirs as such. His "representatives" were the grantees of the Government; and this term or designation being a comprehensive one, its meaning could not be limited to heirs and thus be an unequivocal designation of the descendants of Calve then living as the parties to whom the

Government was passing the title. But it was incumbent on plaintiffs to show by evidence that Calve had not done anything with his claim for the land or allowed anything to be done in regard to it by sale or otherwise to entitle some party other than his heirs to ask of the Government a survey of it and a patent certificate for it. And without this showing plaintiffs were not entitled to recover. In ejectment plaintiff must recover if at all on the strength of his own title and not because of the weakness or want of title of the defendant who is in possession. Stephens v. Murray, 132 Mo. 468; Burnham v. Hitt, 143 Mo. 420; Creech v. Childress, 156 Mo. 343. (c) More than thirty-one years before the commencement of this suit the title to the Calve tract had emanated from the Government, but during all that time none of the plaintiffs or their ancestors under whom they claimed had been in possession of it or had paid taxes on it. All the evidence indicated that during all this time other parties were in possession of it who must have paid the taxes on it and paid the assessments for sewer and street and alley improvements made against it. This "forever barred" plaintiffs from all claim to it under the thirty-year statute, now R. S. 1909, sec. 1884. Fairbanks v. Long, 91 Mo. 628; Collins v. Pease, 146 Mo. 135; Scannell v. Soda Fountain Co., 161 Mo. 619; De Hatre v. Edmonds, 200 Mo. 246; Campbell v. Greer, 209 Mo. 200.

## STATEMENT BY THE COURT.

The plaintiffs brought an ejectment against defendant for the possession of lots numbered 7 and 8 of Block 3837 of the city of St. Louis, fronting 110 feet on the north line of Finney avenue by a depth northwardly of 145 feet to an alley. The ouster is made as of December 1, 1897. The answer was a general denial, coupled with a plea of the Statute of Limitation, based on ten years' adverse possession. Issue was taken. At the

conclusion of the evidence, the trial court instructed the jury that plaintiffs were not entitled to recover. Whereupon plaintiffs took a nonsuit with leave, and within four days filed a motion to set the same aside. This motion was overruled, and plaintiffs appealed therefrom to this court.

On the trial plaintiffs produced evidence tending to prove that they were the descendants and heirs at law of one Joseph Calve. They then introduced in evidence a concession to Calve of a piece of ground in Grand Prairie, April 30, 1768, which was expressed in the following terms, as shown by a copy under a certificate of the Secretary of State of a part of "Livre Terrien" No. 1, page 17, pertaining to a grant of land issued to Joseph Calve as the same is recorded in Book F, p. 153, of the records of the land titles in the office of the said Secretary of State. The concession so certified is translated into English in the following terms:

"Fo. 17, J. H. Calve, on said day on the demand of Joseph Calve habitant at St. Louis we have conceded and conceded with title of property a land of two arpens in front by forty arpens in depth, situated at the grand prerie, holding on one side to the widow Marechal, and on the other to the little River, with the conditions that he establish the said land under the year at day given at St. Louis the 30 April 1768.

"St. Ange-Labuxiere."

To the introduction of this paper objection was made by defendant on the ground that it was incompetent and irrelevant in that the original thereof would be incompetent and irrelevant if offered in evidence for the reason that its contents failed to show that the persons signing it had any authority to utter it or any right to make a grant or concession according to its terms. This objection was sustained, and the paper was excluded from the evidence in the case. Plaintiffs read in evidence from a book, marked "American State Papers—Public Lands, Vol. 3, p. 279. Confirmation of

Village Claims,'' what purported to be a concession to Joseph Calve's representatives 2x40 arpens, Out Lot B, Prairie St. Louis, for acts of ownership by possession and cultivation prior to 1803, with warrant or order for the survey thereof. And plaintiffs also read in evidence a certified copy from the office of the Secretary of State of what appeared to be a copy of the field notes of the survey No. 1583, executed by Joseph C. Brown, Deputy Surveyor of the United States, September 15, 1835, of this concession of 2x40 arpens to Joseph Calve's representatives in the Grand Prairie Common Fields of St. Louis. And plaintiffs then introduced in evidence the following patent certificate issued by Theodore Hunt, Recorder of Land Titles, to-wit:

| "Date | No. | Name | No. Sur. | Arpens | Acres | To whom |
|-------|-----|------|----------|--------|-------|---------|
| May 24 | 1194 | Joseph Calve's | 1583 | 80 | 67 71-100 | delivered |
| 1845 | | representatives | | | | '.Mr. Schible" |
| | | T 45 N R 7 E | | | | |

Joseph Calve died before 1800 A. D. From the date of the government grant to his ''representatives'' until the bringing of this suit, plaintiffs gave no evidence of any acts of ownership over the land or possession thereof by themselves or any one through whom they claimed. There was evidence of possession by defendants or those under whom they claimed for more than thirty-one years.

The errors assigned by appellant are the ruling of the court in excluding the copy of what purported to be a concession by St. Ange-Labuxiere, above quoted, and the instruction that plaintiffs could not recover.

## OPINION.

BOND, J. (after stating the facts as above).

I.    The first contention in the brief of  learned counsel for appellants is that the trial court erred in

excluding from the evidence the copy of the contents of the "Livre Terrien" No. 1, page 17, purporting to be a concession of title to the property sued for to Joseph Calve, signed "St. Ange-Labuxiere" and dated St. Louis, April 30, 1768, set out in the foregoing statement. There was no error in this ruling.

Grant by St. Ange.

An interesting account of the adventures of St. Ange, one of the signers of this paper, is contained in a decision of this court, Administrators of Wright v. Thomas, 4 Mo. 577. In that case it appeared that the same grantors (St. Ange and Labuxiere) executed a similiar concession of the same quantity of land (2 arpens in width by 40 arpens in depth) to the widow Herbert, on the 18th of July, 1769; and the crucial question then presented was the validity of that grant. The evidence then disclosed that St. Ange, who was a French officer, left the territory east of the Mississippi river after its cession to Great Britain by his home government under the same treaty whereby France also ceded her territory west of the Mississippi river, including St. Louis, to the Spanish crown; that St. Ange did not know of the latter grant and supposed when he retired from east of the Mississippi river and took up his residence in St. Louis, that he had again become a resident of French territory; that he was accompanied by a number of French citizens who preferred, like himself, to retire from the east side of the Mississippi after its transfer to Great Britain, and supposed, like himself that St. Louis was still a part of the French domain; that during his residence in St. Louis and prior to the promulgation of the treaty whereby that had become a part of the Spanish possessions, he was accustomed to make similar grants of land, and during the interval previous to the arrival of a Spanish governor he assumed in many respects the prerogatives of that officer, but neither had nor claimed any commission so to do; that after the establishment of the Spanish authority, A. D.

1770, some of the grants made by St. Ange and Labuxiere were confirmed under the authority of the Spanish government. The court held that until this happened such grants had no validity whatever, and ruled that the grant then before the court, not having been confirmed by the Spanish government, had no legal force whatever and carried no title but must be regarded as simply the act of a private citizen "of some influence and distinction," and made without any adequate or official authority.

It is not claimed in the case now under review, that the concession made by St. Ange and Labuxiere on the 30th of April, 1768, was ever confirmed by any authorized representative of the Spanish government, to whom the territory including it then belonged. Some confirmations were made in the year 1770, but there is no evidence that the concession in the present case was one of those confirmed by the Spanish government.

While it is provided by our statutes that copies of the contents of the land book commonly called "Livre Terrien," from which the concession was copied and certified to by the Secretary of State, are admissible in evidence, yet the statute expressly states that this is done "with like effect as the original." [R. S. 1909, sec. 6302.] Clearly, therefore, this copy can have no evidentiary or probative force which would not be given to the original if it had been produced on the trial of this case. And since it has been shown under the ruling before cited, that the original would not have constituted any muniment of title, the trial court did not err in excluding from evidence the copy offered by appellants.

II.    Although the concession made by St. Ange and Labuxiere to plaintiffs' ancestors was void for want of legal authority, yet after the territory west of the Mississippi had become a part of the United States, there is contained in Vol. 3 of the American State Papers—

**Patent to Representative.** Public Lands—a confirmation to Joseph Calve's "representatives" of 2 x 40 arpens for acts of ownership and possession prior to 1803, lying in the city of St. Louis, with an order for its survey. The evidence shows that there was a subsequent survey and a Government patent was issued to 80 arpens or 61-71 acres delivered to a Mr. Schible for Joseph Calve's "representatives" on the 24th of May, 1845. And this presents the question as to the effect of that patent as a vestiture of title. When the title thus emanated from the Government, Joseph Calve had been dead fifty years. It will be observed that this grant was not made to the heirs of Joseph Calve. Hence no prima-facie case existed in favor of any person bearing that relation to him, for the terms of the patent did not purport to put any title in such person. There was no evidence that any descendant of his was at the time in possession of the land or had made any claim thereto during the fifty years that Joseph Calve was dead. Under these circumstances all that the agents of the government could do would be to have the patent read, as it did, "to his representative." In order to connect themselves with the title it was essential that the plaintiffs should adduce evidence tending to show that the daughter of Joseph Calve under whom they claim was at the time of the issuance of the patent his "representative" and entitled to *some part* or all of the land in controversy. That the agents of the Government did not know of any claim or right on her part to the land in controversy is evident from the fact that the patent was not issued to her as an heir or descendant of Joseph Calve, but was expressed so as to vest title "to his representatives." There is not a particle of evidence in the record that she represented him one whit as to *any interest* in the land in dispute. The term "representatives" includes grantees, assignees, transferees, devisees and other persons in privity with Joseph Calve. In order to connect his daughter with

the above patent, it was indispensable that the parties claiming through her should have adduced some testimony to show that she was alive fifty years after the death of her father, and that during his lifetime he had neither conveyed by deed or will the property in question nor had it been taken from him by operation of law in part or in whole. For, unless such a showing was made, a link under the patent in question was missing. They have failed to show any connection through her with the title to any part of the land sued for. Their failure to adduce this evidence creates a hiatus in their chain of title which precluded any recovery in this action under the well established rule, that in ejectment suits, where the parties do not claim under a common ancestor, plaintiffs can only recover upon a clear deraignment for a fee simple title good against the world. [Maynor v. Land & Timber Co., 236 Mo. l. c. 728; Felker v. Breece, 226 Mo. 320; Creech v. Childers, 156 Mo. l. c. 343; Burnham v. Hitt, 143 Mo. l. c. 420; Stephens v. Murray, 132 Mo. 468.]

The trial court did not err therefore in its direction to the jury in this case to bring in a verdict for the defendant.

The judgment herein is affirmed. All concur.