## REICHERT v. JEROME H. SHEIP, Inc., et al.
### (1 Div. 346.)

(Supreme Court of Alabama. Dec. 18, 1924.)

**1. Evidence ⟲164—Testimony that nothing was shown by records except as stated in transcripts read which had been excluded held in effect secondary evidence as to contents.**

Question whether church records showed any births, deaths, marriages, or baptisms of persons of particular name, except as shown by transcripts previously offered in evidence and excluded, which transcripts were read to the witness, *held* in effect to call for an affirmation that the facts shown by transcripts were shown on records such that answer that nothing was shown "outside of what was mentioned" amounted to the giving of secondary evidence as to contents of such records.

**2. Evidence ⟲147—Absence of certain recitals from church records held admissible on issue as to whether plaintiffs were heirs at law or representatives of particular persons.**

Where evidence on issue as to whether plaintiffs were representatives or heirs of particular person tended to show that he and his alleged wife lived at particular place, were members of particular church, that their children were baptized in that church, that rule of church required keeping of registry of such facts, *held* further evidence that such record showed no marriage between such party and his alleged wife, nor the birth nor baptism of any of their children was admissible.

**3. Bastards ⟲3 — Blood relationship being shown, legitimacy is presumed, in support of which common-law marriage will be presumed when filiation is shown.**

When named person is shown to be child or grandchild of another, a presumption of legitimacy arises, in support of which a common-law marriage will be presumed where filiation is shown.

---

⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(212 Ala.)

**4. Bastards ⊙⇒3—Evidence ⊙⇒288—Pedigree may be shown by common repute of family.**

Pedigree may be shown by common repute of family, and when shown presumption of legitimacy obtains.

**5. Evidence ⊙⇒313—Facts tending to disprove truth or accuracy of family tradition showing pedigree are admissible subject to same rules as in other cases.**

Where proofs of pedigree and filiation in support of pedigree all rest on family tradition, facts tending to disprove truth or accuracy of such tradition are admissible, subject to same rules as in other cases.

Appeal from Circuit Court, Baldwin County; John D. Leigh, Judge.

Action in ejectment by James H. Reichert against Jerome H. Sheip, Inc., and Fannie I. Becker. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

Harry T. Smith & Caffey, of Mobile, for appellant.

It being undisputed that plaintiff's predecessors in title were descendants of the children of Louis Duret, the original claimant, the law presumed the legitimacy of these children. Lay v. Fuller, 178 Ala. 375, 59 So. 609; National City Bank v. Shelton Elec. Co., 96 Wash. 74, 164 P. 933. The presumption of marriage and legitimacy can be overcome only by clear and cogent evidence to the contrary. Lewis v. Sizemore (Ky.) 78 S. W. 122; Fox v. Burke, 31 Minn. 319, 17 N. W. 861; Jackson v. Phalen, 237 Mo. 142, 140 S. W. 879; In re Matthews' Est., 153 N. Y. 443, 47 N. E. 901; Keavey v. Barrett, 62 N. J. Eq. 454, 49 A. 1073; Piers v. Piers, 2 H. L. Cas. 331; Caujolle v. Ferrie, 23 N. Y. 90; Nelson v. Jones, 245 Mo. 579, 151 S. W. 80; Cave v. Cave, 101 S. C. 40, 85 S. E. 244. Evidence that a particular church did not show a ceremonial marriage of Louis and Isabelle Durette is insufficient to overcome the presumption. The absence of any recital in the records of such church as to the marriage of these parties and the birth and baptism of their children was inadmissible to prove the fact of the marriage did not exist. Central B. & T. Co. v. Ala. Broom Co., 204 Ala. 410, 85 So. 738; Southworth v. Shea, 131 Ala. 419, 30 So. 774; Strode v. Magowan's Heirs, 2 Bush (Ky.) 621; Code 1907, § 3978; 10 Ency. Evi. 721; 1 Greenleaf on Evi. § 492; 2 Starkey on Evi. (London Ed.) 612; 2 Phil. on Evi. 280; Taylor on Evi. (8th Ed.) 1773; 22 C. J. 901; 17 Cyc. 405.

Stevens, McCorvey, McLeod & Goode, Smiths, Young, Leigh & Johnston, and James H. Webb, all of Mobile, for appellees.

The records of the church are given the office and position of public records, and, the officiating priest being required to record births, deaths, and marriages, it will be presumed that he did his duty. Code 1923, § 7674; Wigmore on Evi. § 3524. Counsel argue the other questions raised and treated, but without citing additional authorities.

BOULDIN, J. The suit is in statutory ejectment. This is the third appeal. Former decisions are found in Reichert v. Sheip, 204 Ala. 86, 85 So. 267, and Reichert v. Sheip, 206 Ala. 648, 91 So. 618.

Plaintiff deraigns title through a patent from the general land office to the "representatives of Louis Duret," issued in 1911 upon a private land claim of such representatives confirmed by act of Congress in 1822.

The issue upon the last trial was whether the persons through whom plaintiff claims, or some of them, are representatives or heirs at law of Louis Duret.

The evidence of heirship was through traditional family history or reputation. This evidence by Anna Leland, a granddaughter, Cecelia Leland, and Mary O. Thomas, great-granddaughters, tended to show the persons through whom plaintiff claims are the descendants of Louis Durette and Isabella Durette, his wife. The names of their ten children are given, with a long line of descendants extending to the fourth generation. Further details of this family history drawn out in part on cross-examination were that Louis Durette and Isabella lived during all their married life in Mobile; that they were Catholics and members of the church now known as the Cathedral; that all their children were baptized in the Cathedral Church; that they were married, lived together, and were known as husband and wife; that Louis Durette was a Frenchman. an officer in the Spanish Army, and died about 1795; that his wife, Isabella, was a negro woman.

The defendants introduced two transcripts from the record of deaths and burials kept in the Cathedral at Mobile, certified by the custodian. One of these recites in substance that on July 18, 1790, the parochial curate of Mobile gave burial, in the cemetery of the Church of Immaculate Conception, in the city of Mobile, to the body of Louis Duret, a lieutenant in the army of this port, and a native of France, who died, having received the blessed sacrament of penance and of extreme unction; the other, that on February 2, 1795, the parochial priest of the Church of our Lady of the Conception, of Mobile, gave burial ecclesiastical to the deceased body of Isabella Duret, black, free, that died about the age of 45 years.

The certificates to these transcripts showed that there has existed since prior to 1750 a rule of the Catholic Church requiring a priest to keep for his parish a record or

register showing each burial, with the name and date of the death of the deceased; also each marriage solemnized, and also the baptism, the date thereof, the date of birth, the name, the father and mother, and the godfather and godmother, of each child.

[1] The defendants then introduced Rev. Charles A. Evers, who testified he was assistant custodian of the records of the Cathedral at Mobile; that they contained records of marriages, births, burials, and baptisms beginning about 1704 and coming on down to the present time; that he had made search of these records from 1704 to 1800 to find all there shown with respect to Louis Durette and Isabella Durette, as to their, or any past marriage of them, or either of them, and the births of any children to them, or either of them, or anything of their baptisms. The record then recites:

"The witness was then asked the following question: Q. 'After that examination you reported to me and furnished me with a memorandum showing a certain entry on those records with respect to Edward, the illegitimate son of Isabella, a slave of Mr. Durette—look at those as I call them (showing the witness certain transcripts from the said records which previously had been offered in evidence by the defendant and excluded on the motion of the plaintiff), and with respect to Isabella, mulatto daughter of Isabella, a black slave of Mr. Durette, father unknown, with respect to Clara, free, mulatto daughter of Isabella, black, a black woman, with respect to the marriage of Frank Lelanda and Clara Durette, another showing the burial of Louis Durette, another showing the burial of Isabella Durette, you furnished that—did you find anywhere in all those records any record other than what you furnished to me of a birth, death, marriage, or baptism of any person named Durette?'

"Plaintiff objected to the question, first, because it calls for the substance of a memorandum which he states he furnished to the attorney as to what was shown by the record, and the memorandum is the best evidence. Second, he is seeking to prove that Isabella and Louis Durette were not married by seeking to show that the records of the church fail to show that they were married, and, third, because the question calls for immaterial testimony; fourth, because the same calls for irrelevant testimony; fifth, because the same calls for incompetent testimony; sixth, because the question is not confined to inquiry as to members of the family of Louis Durette, but inquiries as to any person by the name of Durette.

"The court overruled the objection, and plaintiff then and there duly and legally excepted.

"The witness answered: 'We found a reference to them in a few places, perhaps a marriage or birth, that is all, outside of that, outside of what was mentioned.'"

In form, the question recites the existence and substance of the memoranda or transcripts shown the witness as a predicate for the question whether the church records show any other birth, death, marriage, or baptism of any person named Durette.

The question implies, and calls for an affirmation of, the facts recited as shown on the church records. The answer responded to the question, and does affirm the silence of the records "outside of what was mentioned." The manifest effect of the question and answer was to affirm that the church records do show the facts recited or witness' conclusion as to the effect of such records. This was purely secondary evidence, as clearly pointed out in the first ground of objection.

We cannot accede to the proposition that, in order to prove what the records do not show, it is necessary to prove by secondary evidence what they do show. We consider the evidence decidedly injurious. It invites an inference by the jury that the church records show Isabella was the slave of Mr. Durette and not his wife; that she was the mother of named illegitimate and mulatto children, among them Clara, who married Frank Leland, and leading on to the inference that this is the same Claire Leland, given by plaintiff's witnesses as one of the daughters of Louis and Isabella Durette, and mother of Adolph Leland, who was the father of Cecelia Leland, the witness. Whether any of these transcripts, other than those introduced, were improperly excluded as evidence, is not before us. There was reversible error in admitting secondary evidence of their contents.

[2] In view of the evidence tending to show, as part of the family history relied upon to show pedigree, that Louis and Isabella Durette always lived in Mobile, that they were members of the Cathedral Church, then known as the Church of the Immaculate Conception, that no other Catholic church then existed in Mobile, that their 10 children were baptized in that church, that the rule of the church required the keeping of such registry and that such records were kept and preserved, we think the further evidence, drawn out by appropriate questions, that such records show no marriage of Louis and Isabella Durette, nor the birth or baptism of any of their children, was properly received. 22 C. J. p. 172, § 105. Parol evidence of the absence of records, as disclosed by proper search, is the usual method of proving such fact. Rainey v. Ridgeway, 151 Ala. 532, 43 So. 843; 22 C. J. p. 1006, § 1282.

It may be, as argued, that the presumption of the truth of records as made should not be indulged in equal degree to support an inference that records were made as required by the law of the church. But this goes to the probative force of the absence of such records as a circumstance to be weighed in connection with all the evidence.

[3-5] We fully recognize the presumption of legitimacy. Proof of descent, that a named person is the child or grandchild of

another, carries the presumption of legitimacy. The presumption of a common-law marriage, when filiation is shown, will be indulged, if need be, in favor of legitimacy. It is further the law that pedigree may be shown by common repute in the family, and when so shown the same presumption of legitimacy obtains. Such testimony is not exempt, however, ·from the same tests as other forms of evidence. Where the proofs of pedigree, and of filiation in support of pedigree, all rest upon family tradition, any facts tending to disprove the truth or inaccuracy of such tradition should be received, subject to the same rules of admissibility as in other cases.

For the error pointed out, the judgment of the court below is reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.