(127 So. 671)
**DOE ex dem. SLAUGHTER et al. v. ROE ex dem. W. M. CARNEY MILL CO.**
I Div. 553.

Supreme Court of Alabama.
March 13, 1930.

Rehearing Denied April 17, 1930.

Gordon, Edington & Leigh, of Mobile, and Henry C. Moorer, of Bay Minette, for appellee.

BROWN, J.

This is a common-law action of ejectment to recover possession of the following described lands, to wit: "Section 37, Township 2 North, Range 3 East, and Section 38, Township 2 North, Range 2 East"—situated in Baldwin county, Ala.

The defendants disclaimed possession of so much of the land sued for as lies north of Major's creek and west of the east line of what is known as the Killingsworth grant, said grant being section 51 in township 2, north of range 2 east, and as to the remainder of said land pleaded not guilty.

At the conclusion of the evidence, the court directed a verdict for the defendants, as to the lands not embraced in the disclaimer, and plaintiffs have appealed.

The plaintiff, to speak of John Doe as such, claims title to the property under a demise made by Percy McD. Slaughter, Robert Lee Slaughter, Mildred Hale, Leila May Laws, and Mary L. Myles, who claimed title under the statute of descent and distribution through the procession of devolution as the heirs at law of William McDonald, deceased.

The defendant, Richard Roe, claims title and right to possession under demise of the W. M. Carney Mill Company, who likewise claims under William McDonald, deraigning title under two deeds, to be hereafter noted, executed by William McDonald to John McDonald, deceased, such title as John McDonald acquired, if any, passing under his will to the ancestors of George McGowan, and to him by descent, who, after acquiring the interest of the other heirs, his cotenants, conveyed to the W. M. Carney Mill Company.

The plaintiff offered in evidence the patent issued by the United States on October 20, 1913, to William McDaniel, conveying to him the lands in controversy, and in connection therewith offered evidence going to show that the name "William McDaniel" was written in the patent, when it should have been "William McDonald." There was no objection to this evidence by the defendant, but this fact was conceded on the trial. The plaintiff also offered evidence going to show that Percy McD. Slaughter, Mildred Hale, Leila May Laws, and Mary L. Myles, were heirs at law of William McDonald, deceased.

This evidence, in connection with the confession of truth of the fictitious averment of

lease entry and ouster, by the plea of not guilty, made a prima facie case for the plaintiff. Perolio et al. v. Doe ex dem. Woodward Iron Co., 197 Ala. 560, 73 So. 197.

To meet this prima facie case, the defendant offered in evidence three warranty deeds, the first executed by William McDonald to John McDonald on the 24th day of June, 1808, conveying to John McDonald, "for and in consideration of two hundred dollars to him in hand paid by the said John McDonald, * * * all that piece, tract or parcel of land situate, lying and being in the territory aforesaid (Mississippi Territory) and County of Washington on the waters of Major Creek and bounded as follows, to wit: Beginning at a stake on the west side of the county road and running south sixty-one east, ninety-six chains to a stake; thence south twenty chains across the branches of Majors Creek to a stake; thence north eight-four west seventy-one chains and fifty links to a stake; thence north sixty west, six chains and sixty links across the said county road to a stake, thence to the beginning, containing two hundred and eighty-nine acres. It being one moiety of a tract of land surveyed for the said William McDonald on the 9th day of January, 1808, as a plat and certificate of the same will more fully and particularly represent," etc.

The second of said deeds offered was executed on the 23d of April, 1811, by William McDonald to Archibald McDonald, expressing a cash consideration of $400, embracing "all that tract or parcel of land situate, lying and being within the county aforesaid (Mississippi Territory, Baldwin County), on Majors Creek, butting and bounding as follows, to wit: Beginning on an iron wood corner, on the north bank of said creek, thence N. 75 E. 77 chains to a black oak corner, thence N. 15 W. 45 chains to a stake, thence S. 61 E. to a stake on the west side of the county road, being John McDonald's corner, thence with said John McDonald's line southwardly to Majors Creek, and down the meanders of the same to the place of beginning, containing two hundred and forty-seven acres, be the same more or less," etc.

The third was executed by William McDonald to John McDonald on April 10, 1817, expressing a consideration of $100, cash in hand paid, conveying to John McDonald "all that piece or parcel of land situated, lying and being in the aforesaid territory and county on the south side of Majors Creek and bounded on the north side by Majors Creek, on the east side by land formerly conveyed by the said William McDonald to the said John McDonald and on the southwest side by a line of the original tract granted to William McDonald, running N 60 W, *it being all the balance* of a tract of land granted by certificate (registered in Vol. 1, page 103) to William McDonald *not heretofore sold by* the said William McDonald to the said John McDonald or to Archibald McDonald, containing about fifty acres, be the same more or less, and being part of tract granted as aforesaid by certificate to William McDonald."

The appellants objected to each of said deeds, first, "because it is illegal, irrelevant and immaterial"; and secondly, "on the ground that it is void on account of indefiniteness of description." These objections were overruled, and these rulings present the controlling question on the appeal.

█ In support of their contention that these deeds are void on account of indefiniteness of description, appellants cite Barker v. Southern Railway Co., 125 N. C. 596, 34 S. E. 701, 74 Am. St. Rep. 658, and Kennedy et al. v. Maness et al., 138 N. C. 35, 50 S. E. 450. As we read these cases they hold that parol evidence is not admissible to aid an indefinite description in a deed, though the description furnishes data, which when aided by extrinsic evidence, is made certain. This is not the rule of our decisions. Chambers v. Ringstaff, 69 Ala. 140; Karter v. East (Ala. Sup.) 125 So. 656;[1] East v. Karter, 215 Ala. 375, 110 So. 610; Martin v. Baines, 217 Ala. 326, 116 So. 341; Minge v. Green, 176 Ala. 343, 58 So. 381; O'Neal v. Seixas, 85 Ala. 80, 4 So. 745.

The patent offered by the plaintiffs, and upon which they rely to sustain their alleged title, recites: "Whereas, there has been deposited in the general land office of the United States a certificate of the register and receiver of the land office at Montgomery, Alabama, *whereby it appears that the private* land claim of William McDaniel was confirmed *by the old board of commissioners*, under authority conferred upon them by Section Two of the Act of March 3, 1803 (2 Stat. 229), as Certificate B–74, issued by them on August 23, 1805 (American State Papers, Gales and Seaton's Edition, Volume 1, page 631), and *that said claim has been regularly surveyed* and designated as Section thirty-seven in Township Two North of Range three east, and Section thirty-eight in Township two North of Range two east of the St. Stephens Meridian, Alabama, containing six hundred and nine and fifteen hundredths acres, as shown by the township plat approved February 9, 1848, and December 31, 1837." (Italics supplied.)

By referring to "American State Papers" in respect to public lands, selected and edited under the authority of the Senate of the United States by Walter Lowrie, volume 1, pp. 753 and 768, now in the files of the Department of Archives and History, it appears, that claim was made to this land by William McDaniel as the legal representative of George Phillips, March 27, 1804, under the

[1] 220 Ala. 511.

provisions of the Act of Congress of March 3, 1803, "regulating the grants of lands, and providing for the disposal of the lands of the United States south of the State of Tennessee"; that a survey thereof was made by John Milliken and his chain bearers, James McConnell and Levi Qualls, and "entered in record of claims (east side Tombigbee), vol. 1, page 113, by Edward Lloyd Wailes, for Joseph Chambers, Register"; and on August 10, 1805, the board of commissioners, constituted of Robert Nicholas and Joseph Chambers, entered the following order:

"On due consideration, the Board is of opinion that this claim is supported agreeably to the requirements of the act, and the claimant is entitled to a patent for six hundred and thirty-two acres of land, to be located as follows; viz.:

"Beginning at an ironwood, being the beginning corner described in the claimant's plot, entered in the Register's Office; thence, north, seventy-five degrees east, seventy-seven chains; thence, north, fifteen degrees west, forty-five chains; thence, south, sixty-one degrees east, fourteen chains; thence, south, twenty chains; thence, north, eighty-four degrees west, seventy-two chains; thence, north, sixty degrees west, to Major's creek; thence, along the margin of said creek and its branches to the beginning, shall include six hundred and thirty-two acres."

When the three deeds executed by William McDonald, whose name, according to the undisputed evidence, was erroneously written in the patent and the government records as "McDaniel," are construed in the light of the facts recited above, of which the court takes judicial knowledge as matter of history, to say nothing of the evidence going to show that George McGowan and those under whom he claimed had been in possession of the lands known as the McDonald tract for many years—more than twenty—it is clear that the grantor named in said deeds intended to convey, and did convey the lands allotted to him by the order of the board of commissioners, under the act of 1803, entered on August 10, 1805, and that this land was subsequently surveyed and designated by the government as sections 37 and 38, in township 2 north, range 2 east of St. Stephens meridian, in Alabama, and, as a matter of judicial knowledge, the lands in controversy.

It further appears from said deeds that William McDonald, plaintiffs' ancestor under whom they claim, after his claim had been perfected and allowed, leaving nothing to be done except the issuance of the patent, conveyed by warranty deed all his interest in said lands to John and Archibald McDonald.

Therefore the patent issued after his death inured to and vested the title in his alienees and their heirs. Elwood v. Flannigan, 104 U. S. 562, 26 L. Ed. 842; New England Mtg. Security Co. v. Fry, 143 Ala. 637, 42 So. 57, 111 Am. St. Rep. 62; Doe ex dem. Farmer's Heirs v. Eslava, 11 Ala. 1028; Id. (1st appeal) 7 Ala. 543; McBee v. Stallworth et al., 219 Ala. 494, 122 So. 821.

In the case of Tennessee Coal, Iron & R. Co. v. Tutwiler, 108 Ala. 483, 18 So. 668, the claimant, who had settled on land under the pre-emption laws, died before the issuance of the first certificate, and, under the provisions of section 2269 of the Revised Statutes of the United States of 1869, when the certificate was subsequently issued, it was filed by his heirs, and the patent was issued directly to them. The court there held that the claimant had no vested interest when he conveyed to plaintiff's grantor. This differentiates that case from the case in hand.

Therefore, to sustain the trial court in giving the affirmative charge for defendant, we have but to apply the doctrine often stated, and nowhere denied, that, in an action of ejectment, unless the defendant is estopped to dispute the plaintiff's title, the plaintiff must recover on the strength of his own title, and not on the weakness of his adversary. Alabama Mineral Land Co. v. Baker, 119 Ala. 351, 24 So. 706.

If error intervened on any other ruling, it was without injury. Alabama Mineral Land Co. v. Baker, supra; Prichard v. Sweeney, 109 Ala. 659, 19 So. 730.

Affirmed.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.

