(131 So. 229)

**REICHERT v. JEROME H. SHEIP, Inc. et al.**
**1 Div. 505.**

Supreme Court of Alabama.
Dec. 4, 1930.

Harry T. Smith & Caffey, of Mobile, for appellant.

Stevens, McCorvey, McLeod, Goode & Turner, Gordon, Edington & Leigh, and James H. Webb, all of Mobile, for appellees.

134

**BOULDIN, J.**

This action, statutory ejectment, was begun in 1918. This is the fourth appeal. Former decisions are: Reichert v. Sheip, Inc., 204 Ala. 86, 85 So. 267; Reichert v. Sheip, Inc., 206 Ala. 648, 91 So. 618, and Reichert v. Sheip, Inc., 212 Ala. 300, 102 So. 440.

On the last trial there was verdict for plaintiff. The trial court granted a motion for a new trial. Plaintiff appeals to review this ruling.

Plaintiff claims title through a patent from the United States government issued December 14, 1911, to the "Representatives of Louis Duret."

The controlling issue in the case is: Who were the "representatives of Louis Duret" taking the legal title under this patent? The law defining the takers under such a patent is quite well settled.

The custom of issuing patents to the "representatives" of an original claimant grew out of conditions arising from old Spanish and French concessions, which, long thereafter, were investigated and confirmed by acts of Congress; the act of confirmation often leaving the exact location and area to a future survey.

■ The Supreme Court of the United States has construed "representatives" in such patents to include successors by inheritance or by contract.

The legal title inures to the assignee by contract, and the question of identifying the persons who take title under such patent is left to the courts under general rules of law. Hogan v. Page, 2 Wall. 605, 17 L. Ed. 854; Morrison v. Jackson, 92 U. S. 654, 23 L. Ed. 517; Elwood v. Flannigan, 104 U. S. 562, 26 L. Ed. 842; United States v. Chaves, 159 U. S. 452, 16 S. Ct. 57, 40 L. Ed. 215; Doe ex dem. Farmer's Heirs v. Eslava, 11 Ala. 1028; McBee v. Stallworth, 219 Ala. 494, 122 So. 821; Doe ex dem. Slaughter v. Roe ex dem. Carney Mill Co. (Ala. Sup.) 127 So. 671;[1] McDonald v. McCoy, 121 Cal. 55, 53 P. 421; Chaput v.

[1] 221 Ala. 121.

Pickel, 250 Mo. 578, 157 S. W. 613; 50 C. J. p. 1247.

The "premises" upon which this patent was issued is set forth in the preamble thereof as follows: "Whereas, there has been deposited in the General Land Office of the United States a Certificate of the Register and Receiver of the Land Office at Montgomery, Alabama, whereby it appears that the Private Land Claim of the Representatives of Louis Duret, being Claim No. 2, in Report No. 4, of W. Barton and William Barnett, Register and Receiver of the Land Office at Jackson Courthouse, Dated July 11, 1820—American State Papers Gales and Seatons Edition, Volume 3, Page 448—was confirmed by the third section of the Act of May 8, 1822—3 Stat., 707—And that the said claim has been regularly surveyed and designated as section forty-three in township one north of range one east of the St. Stephens Meridian, Alabama, containing six hundred thirty-nine and eighty-nine hundredths acres."

Plaintiff claims by deed from numerous persons claiming as grantees under the patent. They claim by inheritance as the present descendants of Louis Duret. Evidence of descent is based upon family tradition to the effect that Louis Duret, a native of France, and an officer in the Spanish Army, died in Mobile in 1790, leaving ten children, the issue of his marriage with Isabella, a negro woman, in "Spanish Times." The names of these ten children are preserved, and the succession of plaintiff's grantors by descent from them is quite fully traced in the testimony of Anna Leland, an aged member of the family.

As evidence of an assignment of the claim of these children of Louis Duret, defendants offered in evidence a warranty deed executed by all of them (except one who had died without issue) to Walter Smith and James H. Coke. The deed was executed February 1, 1831, upon a recited cash consideration of $1,920, receipt acknowledged. The grantors designated themselves as "devisees of Louis Duret," but without dispute they are the same persons under whom plaintiff claims through descent from Louis Duret.

On the second appeal, 206 Ala. 648, 91 So. 618, we held this deed inadmissible, and the trial court, bound by this ruling, followed the same.

Appellees in earnest argument insist upon a reconsideration of this ruling. Our statute directs that on this appeal we shall apply the law of the case as we now find it, unbound by our ruling on a former appeal.

The question being of such vital importance we have carefully reconsidered the same, and thereupon feel impelled to depart from such former ruling.

The grounds, both of law and fact, upon which the former ruling was based, are so fully stated in the former opinion, we refer to same without repetition.

The right to make an assignment of the confirmed grant by those who stood in the relation of "Representatives of Louis Duret" at the time of such deed, and so pass out of themselves and their descendants the power to take under the subsequent patent, was there recognized.

Broadly speaking, the rejection of such deed was placed on two grounds:

1st. That the deed, purporting to convey a definitely located and defined body of land of given area, will not be construed to include the grantor's interest in the undefined and unsurveyed grant which had been confirmed to these grantors.

2d. That a warranty deed to a definite estate, a fee-simple title, will not be held to cover an inchoate right of this character.

Dealing with the first question, we refer to the report of the register and receiver set out in the former opinion on claims 2 and 3 interposed by "Reps. of Louis Duret." No. 2, the one covered by the patent, shows the original claimant was John Bte. de Lusser, the amount claimed "unknown," but located "opposite Tensaw and Mobile Rivers" and "Inhabitation Cultivation, From 1791, How long continued unknown."

The act of confirmation with authorization of a survey required that the land be "actually inhabited or cultivated" by the claimant or person under whom he claims, and limited the survey and grant to 640 acres.

Claim No. 3 so reported is not here involved, except as it tends to show what was intended to pass by the deed of 1831, covering two tracts, under the following description: "A certain tract or parcel of land lying, being and situate in the county of Baldwin, described as follows, to wit: 'Beginning opposite the fork or junction of the Rivers Tensaw and Mobile and extending down the Tensaw River on the east side thereof to a bayou or creek and thence running back so far as to include six hundred and forty acres:' also one other tract or parcel of land, lying, being and situate in the county aforesaid and described as follows, to wit: 'Beginning on the south side of the first bayou or creek which lies below the fork or junction of the Tensaw and Mobile rivers thence running down the River Tensaw on the east side thereof, the distance of one mile, thence running back so far as to include six hundred and forty acres.' "

Looking at the records as of the date of that deed tending to identify the tract first described with claim No. 2 and in the light of other facts, it is clear the grantors in the deed are the same persons to whom the grant was confirmed. The deed shows they claimed it through Louis Duret. The area was the same as authorized in the grant; and its location on the Mobile and Tensaw rivers is common to both the grant and the deed.

But a more significant and conclusive fact tending to identify the grant with the deed, a fact which seems to have been overlooked heretofore, is that, when the survey was made eight years after this deed was executed to Miller and Coke, the survey was made to cover the same lands as said deed.

The map appearing in the present record shows the survey was made to cover lands fronting on the Tensaw river from a point at or just above its junction with the Mobile river, thence down the Tensaw to a point on the farther side of the first bayou, and running back from the river between parallel lines of equal length, thus forming a parallelogram save for the meanderings of the river, and covering a fraction of an acre less than 640 acres.

The deed was indefinite, in that the junction of two rivers is not a definite point, and the deed fails to give the bearings of the lateral lines. So the survey made definite what the deed left indefinite.

It would be difficult to conceive this concurrence between the deed and the survey without an inference that they were in some way connected.

Be this as it may, it is clear that the deed of 1831 did cover the land quite exactly as later surveyed and conveyed by the patent. As of course the survey referred to the land "opposite Tensaw and Mobile Rivers." This is shown by the patent itself and the references therein.

Dealing with the sufficiency of the warranty deed of 1831 as an assignment of the "inchoate" title or claim under the confirmed grant, the principles stated broadly and sustained by authorities cited in our former opinion are not questioned.

Probably the most apropos is Lewis v. McBride, 176 Ala. 134, 57 So. 705, wherein it was declared that a quitclaim deed to an "equity of redemption" in land does not operate as an assignment of the "statutory right of redemption." Whatever criticism may be leveled at that case, assuming that the grantor had only a statutory right of redemption at the time, we need not consider, because we think it distinguishable from this case.

A deed in fee simple, warranting against the lawful claims of all persons to any interest in lands, as here, imports a conveyance of any and all interests of the grantors. This rule is elementary. While the deed of 1831 could not pass title because of indefinite

**136**

description, and because of the title being still in the government, we are clear to the conclusion it could and did pass by way of assignment all the interest of the grantors by virtue of the grant No. 2 theretofore confirmed in them by act of Congress.

This was something more than an inchoate right as that term is generally employed. It carried a right to possession so far at least as the prior possession (which was made a condition to the perfection of the grant) extended. It was, as heretofore shown, an assignable right, vesting in the assignee the right to call for a survey and patent; and any patent naming the grantee as in this case passes the title to such assignee or his successors.

Our former decision holding the deed of 1831 inadmissible must now be overruled.

We further hold that the evidence of continuous adverse possession of these lands in the defendants and those under whom they claim since 1876 should have been admitted.

While no prescription runs against the government or its grantee until patent issues, the rule has no application where the issue is: Who shall take under the patent as "representatives" of a claimant long since dead?

The grant being assignable before patent, the evidence is directed to the question of succession by assignment or otherwise. All the reasons, behind the doctrine of prescription as a rule of repose apply to such case.

While the present defendants do not connect their possession with the grantees under the deed of 1831, their possession under successive deeds purporting to pass title continued for more than forty years before suit brought raises the presumption of a grant. Hogan v. Page, 2 Wall. 605, 17 L. Ed. 854; United States v. Chaves, 159 U. S. 452, 16 S. Ct. 57, 40 L. Ed. 215; Hussman v. Durham, 165 U. S. 144, 17 S. Ct. 253, 41 L. Ed. 664; McBee v. Stallworth, 219 Ala. 494, 122 So. 821; Doe ex dem. Slaughter v. Roe ex dem. Carney Mill Co., 221 Ala. 121, 127 So. 671; Chaput v. Pickel, 250 Mo. 578, 157 S. W. 613.

The Duret heirs were actively asserting their claim to this land in 1820 and down to 1831. Their conveyance of same by warranty deed for a valuable consideration explains their apparent abandonment of such claim thereafter; and the subsequent possession of defendants and their predecessors under a continuous, though unconnected, chain of title.

It follows a new trial was properly granted.

The conclusion above expressed renders unnecessary a consideration of the many other questions argued.

·Affirmed.

ANDERSON, C. J., and SAYRE, THOMAS, BROWN, and FOSTER, JJ., concur.

GARDNER, J., dissents.

