TORBERT, Chief Justice
(dissenting).
The property description at issue is found in the following contract provision:
“[Alabama Processing] will convey to [the Utilities Board] all of the assets of [Eastern Shore] ... free and clear of all encumbrances or liabilities, except, [w]ith reference to the real estate assets of Eastern Shore, [Alabama Processing] will convey to [the Utilities Board] all that parcel of land acquired from Eastern Shore necessary to operate the sewer plant and outfall line, and all attendant facilities interests, including sufficient lands for reasonable expansion thereof, the exact legal description thereof to be determined by accurate survey.”
Goodwyn v. Jones, 288 Ala. 71, 75, 257 So.2d 320, 323 (1971), contains a good discussion of the specificity necessary for the description to satisfy the Statute of Frauds, Code 1975, § 8-9-2:
“Appellant advances the general rule, as enunciated in Shannon v. Wisdom, 171 Ala. 409, 55 So. 102, and other authorities, that a contract for sale of land, to satisfy the statute of frauds, must describe the land with such certainty that it *692 can be identified without resort to oral evidence.
“But even so, a general description may be made specific and certain by par-ol evidence and concurrent facts and circumstances sufficient to that end. We observed in Dobson v. Deason, 248 Ala. 496, 498, 28 So.2d 418:
“ ‘The cases cited by appellees to the effect that the writing must contain facts sufficient to identify the land, and oral evidence of the intention of the parties is not admissible ... do not in any respect militate against the rule that a general uncertain description can be made specific and certain by parol evidence of concurrent facts and circumstances sufficient to that end....
“ ‘That is the nature of the description in the instant case, and it is not void for uncertainty, but may be aided by evidence of facts and circumstances making it clear and certain.’
“While the case of Shannon v. Wisdom, supra, and other cases lay down the general rule prohibiting parol evidence from supplying a description, it is not unqualified and inflexible. See Ellis v. Burden, 1 Ala. 458; Meyer Bros. v. Mitchell, 75 Ala. 475; Howison v. Bartlett, 141 Ala. 593, 37 So. 590; Alabama Central R. Co. v. Long, 158 Ala. 301, 48 So. 363; Doe ex dem. Slaughter v. Roe, 221 Ala. 121, 127 So. 671; Dobson v. Deason, supra; Dozier v. Troy Drive-In-Theatres, 265 Ala. 93, 89 So.2d 537. The principle is discussed in 23 A.L.R.2d, Statute of Frauds, § 2, where the test for sufficiency is said to be:
‘“... does the writing furnish the means of identification, or, as some cases have it, does it provide the “key” to the identification, the applicable principle being that that is certain which can be made certain....
“ ‘... The initial question, it seems, is not whether the words are clearly and indisputably sufficient, but rather whether they are such as will entitle the claimant to go forward with his proofs and show if he can that in the light of proper evidence the subject of sale is sufficiently designated.’
“Justice Somerville, in Minge v. Green, 176 Ala. 343, 350, 58 So. 381, expressed the principle in these words:
“ ‘Courts are loath to strike down [a] deliberate contract because of supposed uncertainty in any of its terms; and, if any of these terms are ambiguous and prima facie capable of more than one meaning, the court will look to the situation of the parties and the objects they had in view to determine their true meaning. Especially will the court in such cases construe doubtful terms against the party who framed them, and who is offering or undertaking to do the things in question. These are elementary principles....’”
In this case the description clearly is not sufficient, in and of itself, to identify the property to be conveyed.
What are the concurrent facts and circumstances? The evidence reveals that while the buyer sought to purchase all of the real property, the seller wanted to retain some of the property that was adjacent to Highway 98. Mr. Bassett, a member of the Utility Board (the buyer) testified:
“Q. And would a piece of land of that kind adjacent to Highway 98 be valuable?
“A. Oh, yes, sir.
“Q. And it was on that basis that you initiated the discussion of a desire to withhold a portion of the land for further development?
“A. Yes. It just didn’t work. It was one of the deals that they wouldn’t go along with.
“Q. Did you identify what portion of the property you wanted to cut out?
“A. We didn’t go into any details. I just said, you know, it would take a lot of money to fill in that front end and it will probably be of no value to the plant and I don’t see where the plant would possibly need it and, you know, I would like to negotiate it out.
*693 “Q. Isn’t it true that on October the 29th, 1985, when you all sat down to try to close this deal, to conclude this contract, that you wanted to retain a piece of property, they didn’t want — they, the Utilities Board, didn’t want you to?
“A. Um-hum.”
While the seller now maintains that it had agreed to convey all the property so as not to lose the deal, that testimony is in direct conflict with the writing evidencing the transaction and with the testimony of the representatives of the buyer. Ms. Turner, in her affidavit, stated:
“4. During the negotiations which culminated in the execution of the APCI Agreement, we were unable to reach agreement with APCI concerning the amount of the real property owned by Eastern Shore that was to be conveyed by APCI to the Board. After it became apparent that our negotiations were stalled on that point and we would be unable to reach an agreement over the amount of the land to be retained by APCI, the exact description of the real property to be conveyed to the Board of APCI was left open and the language that appears in the APCI Agreement was approved in order to give the Board an arguing point, if we were unable to reach an agreement with APCI later, as to how much of the property the Board should get.”
Mr. Bassett testified:
“Q. Let me get you to look at the first page of Exhibit 1. Paragraph two of that document says — and I’m paraphrasing, somewhat, I hope without changing the substance — that the seller —that would be Alabama Processing— agrees to sell all of the assets, including real property, personal property and mixed property of Eastern Shore Waste-water Treatment Facility free and clear of all encumbrances, except that, in respect to the real estate assets of Eastern Shore that the real estate that sold would be that necessary to operate a sewer plant, including sufficient land for reasonable expansion.
“Q. Do you recall that language being discussed on October the 29th, 1985?
“A. Yes, sir.
“Q. Could you tell us the rationale or the purpose, the reason that you all were addressing—
“A. There was different language there and we weren’t satisfied with it. We weren’t satisfied with the amount of property that we were getting. And it appeared that it was about to kill the deal and, if I recall correctly, we attempted to work out something and that was the manner in which it was worked out.”
I find nothing in the concurrent facts and circumstances that make this general description certain. It should also be noted that there was no agreement as to how the amount of necessary property was to be determined or who was to do so.
The majority opinion takes the position that because the seller now stands ready to sell all the property, the defect in the description is cured and cites Greene v. Jones, 377 So.2d 947 (Ala.1979), as authority. Greene does not support that proposition. Greene simply stands for the proposition that the seller, in a buyer’s action for specific performance, can not be heard to complain that the description of the property no longer adequately describes the property where the seller had conveyed part of the property at issue to a third party.
It would seem that the seller’s statement that it now is ready to convey all the property is no more than an offer to enter into a new contract. And if the seller is allowed to change its mind as to the property to be conveyed, does the buyer not have a similar right to change its position? Certainly, therefore, I would affirm the summary judgment.
SHORES, J., concurs.